## Myers *v.* Bryson et al., Appellants.

*Equity—Jurisdiction—Practice—Account—Trust.*

A bill in equity for an account " in order that a final settlement of said estate may be made, and your orators receive whatever they may be entitled to of the same," and for further relief, is substantially a bill for a termination of the trust, settlement and distribution, and not merely for an account as a basis for future settlement.

Even if the first prayer had been wanting, a court of equity having taken jurisdiction of the case, and finding it ready for final adjudication, would ordinarily go on under the prayer for further relief, and make an end of the litigation.

*Decedents' estates — Equity —Parties—Amendment—Refunding bonds— Practice—Distribution—Family settlement—Rent—Costs.*

The widow and the five children of a decedent agreed in writing that letters of administration should not be taken out, but that the two sons of decedent should act " as agents for the estate," and conduct the business of decedent " as if it were their own, advising and consulting with the family in regard to matters of importance." The sons were " to account to the family once every six months, showing the debts, accounts, etc., of said business." The sons accepted the trust and conducted the business,

using, as their father had done, a portion of the building which the family used as a dwelling house. Six years afterwards the widow and mother died intestate and apparently without debts; no letters of administration were taken out on her estate, and the sons continued the business as before. They however never stated or rendered an account to their sisters. One of the daughters married, but the other two sisters lived with their brothers in the mansion house. Subsequently the married sister filed a bill against the brothers for an account, joining as defendants the other sisters who had refused to unite with her as plaintiffs. There was no demurrer to the failure to join the representative of the widow as a party. Held:

1. That under the circumstances the omission to join the widow's representative was not such a fatal defect as to require the dismissal of the bill for want of proper parties. If necessary, the record may be amended by the addition of the proper parties.

2. If, in the judgment of the court, an amendment is not necessary, distribution of such decedent's interest may be made as if set apart to an administrator, and proper refunding bonds taken.

3. That the sons were not bound to account for rent for the portion of the mansion house used in the business, as the real estate was not within the terms of the trust.

4. The omission of the sons to account every six months, when no demand was made upon them for an account, was not such an omission of an absolute or peremptory duty as would justify the imposition of the costs of the equity suit upon them.

Argued Oct. 17, 1893. Appeal, No. 72, Oct. T., 1893, by defendants, John and Thomas B. Bryson, from judgment of C. P. Washington Co., No. 634, in equity, from decree on bill in equity, by Theodore Myers and Margaret Bryson Myers, his wife. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and THOMPSON, JJ.

Bill in equity for an account. Before McILVAINE, P. J.

The bill was filed for an account under the following agreement in writing, signed and sealed by the parties:

"Article of agreement made this 30th day of September, A. D. 1881, between Margaret Bryson, widow, John Bryson, Ann Eliza Bryson, Thomas B. Bryson, Catharine R. Bryson and Theodore Myers and Margaret B. Bryson Myers, his wife, in the right of widow and heirs at law of Thomas B. Bryson, late of Washington, Pennsylvania, deceased.

"Whereas, the said Thomas B. Bryson in his lifetime engaged in the business of manufacturing and selling furniture,

and in the business of undertaking, and was seized and possessed of a considerable estate, consisting of real and personal property, stock in trade, notes, book accounts, etc.:

" Now it is agreed by and between the widow and all the heirs, that for the present no letters of administration shall be taken out upon the estate of said deceased. That the household and kitchen furniture and other things relating to housekeeping, shall remain at the mansion house for the use of the widow and family, that the control of all personal estate and the aforesaid business shall be in the hands of the two sons of said deceased, John and Thomas B. Bryson, above named, who are hereby authorized and empowered to act as agents for the estate, to buy and sell, to collect outstanding indebtedness of the estate, as well as accounts arising since the death of the father, to sign receipts and to make settlement with debtors and creditors of the estate, and in all things to control and manage the personal estate, and the said business, as if it were their own, advising and consulting with the family in regard to matters of importance ; they shall also act as agents of the family in the sale of real estate, but no sale shall be valid thereof unless duly ratified and confirmed by the whole family.

" The said John and Thomas are to account to the family once every six months, showing the debts, accounts, etc., of the said business.   The interest of the several parties hereto, under this agreement, after the payment of all debts, and expenses, shall be the same as under the intestate laws of Pennsylvania."

The prayers of the bill were : (1) " To require the said John Bryson and Thomas B. Bryson, Ann Eliza Bryson and Catharine R. Bryson, the defendants, to make full and complete answers to all the various matters set forth in the bill ; (2) to constrain the said John Bryson, Thomas B. Bryson, Ann Eliza Bryson and Catharine R. Bryson, by a decree or order, to render and file a clear and concise statement and account of the business, affairs, condition and standing of said estate in order that a final settlement of said estate may be made, and your orators receive whatever they may be entitled to of the same ; " (3) further relief.

The case was referred to Henry Gantz, Esq., as master, who recommended a decree in accordance with the prayers of the bill.

Exceptions to the master's report were overruled in the following opinion by McILVAINE, P. J.:

" Under this agreement John and Thomas B. took charge of the decedent's personal estate and the business which their father had left, taking it up and conducting it in the same room and shop which he had occupied, using the firm name of Bryson Bros.

" Mrs. Margaret Bryson, the widow and mother, died in March, 1887, intestate, and her interest under the intestate law vested in the five children. No letters were taken out on her estate, but, apparently by the consent of all parties, the business was still continued and conducted the same as before her death. No account was ever stated or rendered by John and Thomas B. to the family, showing how the business stood. Prior to the widow's death, she and John and Thomas B. and the two single daughters, Ann Eliza and Catharine R. Bryson, lived in the same house occupied by the family before the death of Thomas B. Bryson, Sr.; and after her death the two boys and these two daughters still continued to occupy it. The shop and storeroom was on the same lot, and is really part of the same premises on which they resided. The other house and lot was sold, and the purchase money paid to the boys.

" Margaret B., the third daughter, was married and lived with her husband. On March 11, 1890, she filed a bill in this court to compel these trustees or agents ' to render and file a clear and concise statement and account of the business, affairs, condition and standing of the estate ' put into their hands under this agreement. The two daughters who lived with John and Thomas B. refused to join, as plaintiffs, with their sister, and they were made parties defendant, so as to have all the interested parties in court. An account was decreed, and Henry Gantz, Esq., appointed master to hear the parties, examine the books and state an account. He filed his report, and to it a number of exceptions have been taken by the defendants, John and Thomas B. Bryson, and they are now before us for consideration. We do not intend to take them up seriatim, but will state our conclusions on the questions raised thereby in a general way, as we consider the items of the account stated by the master.

The master in this case has had imposed upon him a most

difficult task.   The accounts were not kept in a systematic way, and they run over a period of eight years and nearly six months, counting to March 12, 1890, the time to which he brings up the account.   More than that, the defendants, John and Thomas B., appear to have had the idea, in managing this business, that it was their own, and did not keep their accounts with reference to a settlement with the family.

" Before reviewing the account stated by the master, we will consider the exceptions of the defendants, wherein they complain that the master did not recommend a decree dismissing the bill.

" The defendants, John and Thomas B. Bryson, took charge of the property of the estate of their deceased father as agents and trustees.   What they might realize from the business was first to be applied to the payment of the debts of the estate, and the balance that might be made in the business belonging jointly to the parties to the written agreement; and in managing this property they had a trust to perform such as would give equity jurisdiction.   The orphans' court would have no power to enforce the covenants of the agreement.   If some creditors had taken out letters of administration, such administrator might, perhaps, have had a standing to require the settlement of the estate in the orphans' court, but the defendants, being parties to the agreement, are estopped from denying the jurisdiction of a court of equity.

" Neither can it be claimed that a bill in equity to compel an account will not lie because the trust still exists, it not appearing that all the debts of the estate are paid: 1 Parsons' Equity Cases, 418.

" Under their agreement the agents or trustees were bound to account to the family, of whom the plaintiff, Margaret B. Myers, was one, every six months.   This they failed to do, and equity has jurisdiction to compel a statement or an account of the business up to the date of the filing of the bill for the information of those interested, and as a basis for future account or a final account, after all the debts of the estate are paid and the trust dissolved or the agency terminated.

" Margaret Bryson, one of the parties, died near three years before this bill was filed, and it might have been proper to have joined her administrator as a party in this proceeding.   But, so

far as it appears, she died intestate and without any debts and no estate, except her interest under this agreement, and no letters of administration have ever been taken out on her estate. Her heirs under the intestate law are the parties who, with her, executed this written agreement, and who are interested in this proceeding. We do not think that the bill should be dismissed for want of proper parties, especially as, under the bill, no question of distribution can now arise, the object of the bill being simply to compel a statement of an account of the business, and not to dissolve the trust and terminate the agency.

" Another remark, before proceeding to review the master's account. It is this: The master, in his report, has not given in detail how he arrived at his conclusion as to each particular charge and credit, and has not filed schedules as to all the aggregate charges and credits, showing the individual items which go to make up these aggregates. Neither do the exceptions, where they are to these aggregate amounts, in all cases point out wherein they are wrong, or what the proper amount should be. The court cannot be expected to take these accounts and papers, and go over the whole of eight years' business, to see if the master is right or not. We must take the master's statement of charges as correct, unless it appears that he has committed manifest error in the manner pointed out by the exception. The simple statement, for instance, in an exception, that the master erred in finding that the undertaking and goods sold by the defendants amounted to a certain sum, is not sufficient. To pass on this exception would require the court to go over the whole account as the master did. The exception should also state what has been included in this aggregate that ought not to have been included, so as to direct specific attention to the disputed items.

" Now, let us briefly review the items of the account stated by the master, and the objections thereto.

" The master has ascertained from the books what the undertaking and goods sold from September 30, 1881, to March 12, 1890, amounted to, and this is shown by an itemized schedule to be $36,723.21. This finding is excepted to generally, but we cannot say that the master, who spent much time in making this schedule from the books and papers submitted to him, has committed an error, and the exception filed does not point out

wherein this charge is erroneous. The master next finds that of the debts due Thomas B. Bryson, Sr., at the time of his death, the defendant collected the sum of $1,096.56. This charge is excepted to, but must be disposed of in the same way that the exception to the first charge is disposed of. The next charge is $1,500 for real estate sold. This is admittedly correct. No exceptions are taken to the amount of the following charges, to wit: Discounts, $152.79, and new stock on hand March 12, 1890, $1,700; borrowed money received by defendants, $2,551.11; railroad stock of the decedent, $120; stock in agricultural society, $60; amount received for cow sold, $20; and $275.11 personal debts paid out of trust funds. The charge of $600 for value of hearse on hand is objected to. We have examined the testimony touching this item, and we cannot say the value of the hearse is overestimated. This leaves but two other items on the debtor side of the account, as stated by the master, to be considered, and the first is the charge of $1,700 rent for the dwelling house. The accountants object to this charge only on the ground that the agreement does not include the management of the real estate further than to authorize the sale thereof. In our opinion the object of the agreement was to put the whole management of the whole estate into the hands of the two sons, and if they saw fit to put the real estate to sale, or to rent, they could do so, the only condition being that they could not sell unless all the parties interested consented. We think this a proper charge, and the amount fixed by the master is reasonable; therefore, the exception of the accountants to the charge, and the exception of the plaintiff to the amount of the charge, are overruled. The other charge is for $700, amount of old stock on hand. As the accountants are charged with all goods sold and amount on hand March 12, 1890, we think this charge a duplication.

" The master credits the accountants for moneys paid out for goods, and gives an itemized statement, amounting to $25,740.79, and to this amount no exception is taken. He credits the accountants with $1,490.29 for debts of Thos. B. Bryson, Sr., paid, also with $4,930.78 for the payment of notes of Thos. B. Bryson's estate, to which no exceptions are taken. The master allowed credits for freight, $897.96; license, $69.71; livery, $1,289.69; advertising, $107.83; hauling, by McCollum, $900;

by Baker, $100. The accountants except to these credits as not being enough, but their testimony is so indefinite, and no account being kept of so many expenditures which they claim should be added to these credits, we cannot say that the master has erred. The credit for old stock on hand valued at $100 is not objected to, neither is the credit for the bill of Thos. B. Bryson, Jr., against the estate of $169.12, but it is claimed that in addition to this bill of $169.12 and the credit of $68.80 allowed him for money which went into the business from his accounts brought from Prosperity, he should have credit for the balance of his bill, as shown by defendants' exhibit ' H.' The testimony shows that a number of the accounts enumerated on this schedule were not good, and have never been collected. The master finds that $68.80 of the accounts were collected and went into the business, and has also allowed the bill against the estate of $169.12. We cannot say he was in error in disallowing credit for the uncollected accounts. They still belong to Thos. B. Bryson, Jr. We think, however, that an additional credit of $150 should be allowed for the hearse which was traded into the one which is charged against the accountants. The presumption arising from possession, and the other evidence in the case, make out a prima facie case of ownership of this hearse in Thos. B. Bryson, Jr. The master allows to the accountants, for the management of the estate for eight and one half years, the sum of $7,650. The exception to the amount of this credit is not pressed.

" This, we believe, covers all the items charged against and credited to the accountants. But exceptions are taken to the manner in which the account is stated, and in our opinion the exceptions are well founded. We, however, do not mean by this to say that the account stated by the accountants, and attached to the master's report, is properly stated, for it is not. The difficulty with both accounts is, that they started apparently with a view of ascertaining a balance for present distribution. If that was the object, then there might be some reason for the position taken by the counsel for accountants, that they should only be charged with cash actually received, and not with the amount of their sales and undertaking. On the other hand, although the master, in our opinion, was right in first ascertaining the amount of the goods sold and the amount of

the money earned in the undertaking business, yet he ought to have also ascertained, in order to show perfectly the standing of the business, the amount of the bills or individual accounts not collected on March 12, 1890. This he did not do, and the testimony and schedules exhibited to the court do not enable us to supply this omission. The account will have to stand as it is. Neither does the master's report show whether or not on March 12, 1890, the estate owed any debts, and we cannot supply this omission. All that the court can do is to take the items found by the master as proper charges and credits, and restate the account, not with the view of showing a balance for distribution, but merely to show the estate what the defendants on March 12, 1890, were chargeable with, and what they were, at that date, entitled to credit for as the basis of a future settlement.

" This, we believe, covers, in a general way, the exceptions filed to the master's account. And in accordance with what we have said in this opinion, we have incorporated in our decree an account showing the condition of this trust estate. This leaves but one other question, and that is the question of costs. The defendants, John and Thomas B. Bryson, by the manner in which they kept these accounts, and by their failure to make a report of the condition of their business to the family, including the plaintiff, are responsible for this proceeding, and I do not see how they can expect to escape the payment of the costs."

The decree stated an account showing charges, assets and credits, in accordance with above opinion, but no distribution.

*Errors assigned* were in overruling exceptions to master's report, quoting them.

*R. W. Irwin, Acheson, Clark & Berryman* with him, for appellants, cited: Mathews v. Stephenson, 6 Pa. 498; Story's Eq. Jurisp. § 1526; Lance's Ap., 112 Pa. 456; Perry on Trusts, § 875; Gloninger v. Hazard, 42 Pa. 400; Agnew v. Whitney, 11 Phila. 298; Gas Co. v. Gas Co., 24 W. N. 573.

*J. M. Patterson, J. L. Judson* with him, for appellees, cited: 1 Dan. Ch. Pr. §§ 203, 294; Adams's Eq. 676; Patrick's Ap., 105 Pa. 359; Kisor's Ap., 62 Pa. 428; Kutz's Ap., 100 Pa. 79.

OPINION BY MR. JUSTICE MITCHELL, November 6, 1893:

We are unable to agree with the master and the learned court below, that this is a bill for account only, as a basis for future settlement. The second prayer is for an account "in order that a final settlement of said estate may be made, and your orators receive whatever they may be entitled to of the same." This is substantially a prayer for a termination of the trust, settlement, and distribution. But even if this had been wanting, a court of equity having taken jurisdiction of the case up to this point and finding it ready for final adjudication, would ordinarily go on under the prayer for further relief, and make an end of the litigation.

This result however might be modified should it appear that the purpose of the trust, the payment of the debts of Thomas B. Bryson Sr. has not yet been completed. There is no express finding by the master on this point, but the length of time since his death, the absence of any reference to existing creditors in the bill, answer, or master's report, and the statement of account by both master and court, justify us in assuming, for the present purpose of this case, that the debts of Bryson Sr. have been settled.

Viewing the bill as one for distribution, the representative of Margaret Bryson, the widow, should have been made party. There was no demurrer however to the omission to do so, and under the circumstances it is not a fatal defect. It may still be done by amendment should it appear to be necessary, but taking into consideration the facts as stated by the court, that the widow has been dead more than six years, that she died intestate, without debts or estate other than her interest in the subject of this litigation, and that her heirs and distributees under the intestate law are all parties now before the court, we think that unless some interest or party, not now represented should appear, the court may proceed as if that was done which should have been done, and decree distribution of her interest, as if it had been adjusted and set apart to an administrator, taking refunding bonds from the distributees should it be thought necessary for the protection of accountants and possible creditors.

Coming now to the account we must sustain the exception to the surcharge for rent of the dwelling. Under any view, if

rent was to be charged, a credit should be given as an item of expense in carrying on the business. But it is clearly outside of the trust, which is limited to the business and the personal estate other than household furniture. There was a power of sale, but until that was exercised the trust did not include the real estate, and if any _ent was received for the other house subsequently sold, it came into the account as the proceeds of the sale did, because it was money had and received to the use of the cestuis que trust and not because the trust extended to the realty out of which it came. All the children were tenants in common of the dwelling house, subject to their mother's dower, and, by agreement of all, it was to continue as a home for the family, with no charge to any of them for occupancy, and of course none for rent of the business portion which was used for their common benefit.

We must also sustain the exception to the imposition of the costs on the accountants. They were not in any more than nominal default. The agreement bound them " to account to the family once in every six months," but this was not an absolute or peremptory duty, unless the family wanted an account, and this they never did. No demand was made until the present suit, and two of the three sisters have expressly refused to join now. It is said that the accounts of the business were not kept systematically, or with reference to a settlement with the family. No fraud is charged however, and as to the management of the business " as if it was their own," that is what the agreement in express terms authorized the brothers to do. It is true that this management has been retained apparently longer than the purpose of the trust required, and that the time has come when the estate ought to be settled up and distributed, but on the other hand the family has had its living for twelve years, and now has the dwelling and the assets of the business, which the agreement shows that in 1881 they were or thought they were in danger of losing. In view of this general result a little arbitrariness on the part of the brothers should be overlooked, and in the entire absence of bad faith it would be highly inequitable to put on them the costs of this proceeding. The expenses should come out of the estate.

We have not been convinced that the other objections to the account as stated by the court are valid. As distribution is to

be made however, the account should be brought down to date. The items of " assets," subject to such changes as may be necessary in bringing down the account, may be taken by the accountants at the valuation fixed by the court, or if they elect not to do this, then they must dispose of them and bring the proceeds into the account as money received.

On final decree winding up the trust and making distribution, the rights of occupancy of the dwelling house under the agreement will terminate, and thereafter the parties will hold it as tenants in common, with such rights as appertain to that estate.

Decree reversed, and record remitted for re-statement of account, and distribution, in accordance with this opinion.

NOTE. We may add, though not strictly part of our judicial duty, that if the parties, with their counsel, would meet together in the same commendable spirit of family harmony in which they made the agreement of 1881, they ought to be able to settle this whole matter amicably with no further delay or expense. The complainant Mrs. Myers should recollect that her brothers' management has saved for her the interest she now has in the house and the assets, while as far as appears she has not had the same support out of the business and occupancy of the house, as the others of the family during this long period, and they should bear in mind therefore that though this does not vary her legal rights under the agreement, it does give her a strong moral claim to liberal consideration in the settlement.