# Hurst, Appellant, *v.* Brennen (No. 1).

*Equity—Jurisdiction—Bill for partition and accounting—Partnership accounts—Adjustment of entire controversy.*

1. Where a court of equity has acquired jurisdiction it has power to settle the entire controversy.

2. Where for a long period of years a number of co-owners of a mining property have operated the same for their common benefit, as partners, and one of the cotenants files a bill for partition of the property and for an accounting, and it appears that partition cannot be granted without spoiling the whole, because of the nature of the property, the court having acquired jurisdiction in equity will decree a settlement of the partnership accounts.

*Statute of limitations—Partnership accounts—Co-owners.*

3. In such case whether the parties to the suit be regarded as cotenants or as partners, the statute of limitations is not a bar where it appears that it was admitted upon the pleadings that there was an open account between the parties and that a duty to account existed.

*Equity—Pleadings—Amendment to answer.*

4. An amendment to an answer is entirely within the discretion of the court and will not be denied when justice demands it.

*Partnership—Secret profits—Duty to account.*

5. Where one or more of several partners have made secret profits by becoming interested in a business which controlled the sale of the product of a mine owned by the partnership, they must account for such secret profits to their copartners.

Mr. Justice Elkin dissents.

Argued October 10, 1912. Appeal, No. 23, Oct. T., 1912, by plaintiff, from decree of C. P. Westmoreland Co., No. 311, Equity on bill in equity in case of Braden Hurst and McClure Coke Company, now H. C. Frick Coke Company, v. John P. Brennen. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin, Stewart and Moschzisker, JJ. Affirmed.

Bill in equity for partition and accounting. Before David A. Miller, Esq., Master

The opinion of the Supreme Court states the case.

The errors assigned are sufficiently set forth in the opinion of the Supreme Court.

*James S. Moorhead,* with him *Robert W. Smith,* for appellant.

*Paul H. Gaither,* with him *Charles E. Whitten,* for appellee.

Opinion by Mr. Justice Potter, January 13, 1913:

The record in this case presents an unusual and apparently an entirely needless complication of business interests. It also shows the course of a litigation prolonged to an extent which we are glad to say is rare in this Commonwealth. The controversy concerns the proper distribution of the profits derived from the operation of the Union Coke Works during a period of some twelve years, from 1883 to 1895.

On December 8, 1896, a bill in equity was filed by Braden Hurst and the McClure Coke Company against John P. Brennen and William J. Rainey, praying for the partition of a tract of land containing three acres and seventy-one perches, having thereon erected coke ovens, railroad. tracks and other improvements necessary to the operation of a coke plant, and praying also for partition of the coal underlying an adjoining tract containing eighty-four acres and thirteen perches, all of the said property being situated in East Huntingdon Township, Westmoreland County.  The bill asked also for an accounting of all the moneys received from the business by each of the parties during the continuance of the operation.  It was averred that plaintiffs and defendants were tenants in common of the land and coal described, the McClure Coke Company being the owner of an undivided three-eighths interest therein, Braden Hurst of a one-eighth, and the defendants Brennen and Rainey each of a one-fourth interest; it was further averred that mining operations had been conducted in the coal referred to for a number of years, and were then being carried on by the McClure Coke Company; that the latter company had taken the coal and sold it for the common benefit of all the owners thereof, according to their respective interests, and had set apart in a proper account the shares of the co-tenants, and was at all times willing to pay over to them their just and proper share of the net profits resulting from the mining of said coal; that money was due and owing to each of the defendants, but that no settlement had been made between them and the said McClure Coke Company; that the premises described had been used in connection with other property belonging to the plaintiffs and to defendant Brennen, as one coke plant known as the Union Coke Works; that the property could not be divided according to the respective interests of the several owners, or in any manner, without prejudice to, or spoiling the whole, and that the parties had been

unable to make any satisfactory partition of the said premises among themselves. This bill for partition and for an accounting was therefore filed. The defendants Brennen and Rainey filed answers admitting substantially all the material averments of the bill, and alleging that large sums of money arising out of the mining operations of plaintiffs were due to them. They joined in the request for an accounting and settlement.

On February 8, 1897, the court below decreed that partition of the said premises should be made, and appointed a master to make the partition, and also to take an account of the rents, issues and profits of the common property in the hands of any one or more of the cotenants, and to ascertain and fix the amounts owing by any one or more of the cotenants to the others. The master having reported that the property could not be divided, it was, under a decree dated December 27, 1897, awarded to the defendant Rainey at his bid, which was in excess of the valuation placed on it by the master.

Under this appeal no question is raised as to the partition of the property or the distribution of its proceeds. But the controversy relates only to the accounting for the proceeds derived from the operation of the plant prior to the partition proceedings. The taking of testimony before the master appears to have been closed on July 28, 1898, but for some unexplained reason, his report was not filed until February Term, 1905. In his report the master found that there was due to William J. Rainey, or to his estate, he having died in the meantime, various amounts aggregating the sum of $35,-688.03. He also found that there was due to John P. Brennen, the other defendant, the sum of $12,488.35. Exceptions were filed to the report which were overruled by the master. More than six years then elapsed before the case was disposed of by the court below. On November 16, 1911, exceptions were overruled, and the decree as recommended by the master was made absolute. Upon the same date, it having been shown to

the court that the McClure Coke Company had been duly merged in the H. C. Frick Coke Company, whereby the latter company became liable for the debts and liabilities of the McClure Coke Company, leave was given to the Frick Coke Company to become a party plaintiff and as such it has taken this appeal from the final decree.

The facts upon which the decree is based are found by the master substantially as follows: In 1872 the plaintiff, Hurst, and three other persons, Stoner, Neel and Schall, purchased certain coal and surface lands located in East Huntingdon Township, Westmoreland County, aggregating about fifty-one acres, and began the erection of coke ovens thereon and the mining of coal. On June 11, 1873, Peter L. Shupe conveyed to the four parties named an undivided three-fourths interest in a nine-foot vein of coal underlying eighty-four acres and thirteen perches of land in the same township, and in the year 1875 Schall conveyed his interest in the properties to his three cotenants. On the purchase of the Shupe tract, the purchasers entered into a contract with Shupe, who retained an undivided one-fourth interest in the coal, for the construction of coke works. Under this contract, twenty-eight ovens were erected on one of the original tracts owned by them, and forty-two ovens were erected on the Shupe tract; a coal tipple was erected on the same tract, and the mine opening was located on the line between the properties. The business was conducted as the Union Coke Works. It was agreed between the parties that Shupe should receive one-seventh of the net profits arising from the operation of the entire properties in common, the remaining six-sevenths being divided among the other parties to the sale and contract. The business was conducted according to the terms of this agreement until 1878, and the net profits were divided into sevenths, of which Shupe received one part. In 1878 Shupe leased his undivided interest in the Union Coke Works to William J. Rainey, one of the de-

fendants, and afterwards by deed dated January 1, 1880, sold and conveyed to Rainey all his undivided one-fourth interest in the Shupe coal, together with all his interest in the plant known as the Union Coke Works with the equipment for the manufacture of coke, and assigned to him all claims and demands due the grantor from his copartners and cotenants. On January 15, 1880, Gilbert T. Rafferty and Charles L. Donnelly purchased from Hurst, Stoner and Neel the undivided one-half of their interest in the Union Coke Works. After this purchase and until September 30, 1895, the business was conducted according to the terms of the original contract, the net profits being divided into seven equal shares, three shares being paid to Rafferty and Donnelly, one share each to Stoner, Neel and Hurst, and one share being placed in a separate account, known by various names, but which remained intact, first in the hands of Rafferty and Donnelly, then of McClure & Company, and latterly in the hands of the McClure Coke Company. On June 28, 1895, John P. Brennen purchased from Neel and Stoner their undivided interests in all the properties connected with the Union Coke Works, with their appurtenances, and purchased all rights and claims of Neel to profits due to him from the McClure Coke Company, or from Rafferty and Donnelly, up to and including June 28, 1895. On or about January 1, 1885, the other parties in interest, including Rafferty and Donnelly, the then operators of the works, made a settlement with Rainey, paying him one-seventh of the net profits of the Union Coke Works. The coal underlying all the tracts was always operated as a whole, and no distinction appeared in the settlements made by Rafferty and Donnelly, while they operated the works, from 1880 to 1888, as to profits realized from coal taken from the various tracts of land. Nor were the cost of improvements or the expenses of operation apportioned on the books of Rafferty and Donnelly among the different tracts. In June, 1888, the McClure Coke Company, a

corporation, took over the business of Rafferty and Donnelly, together with their assets and liabilities, and from that date until October 1, 1895, operated the works. On August 11, 1883, an account was opened on Rafferty and Donnelly's ledger, called "Disputed one-seventh interest in Union Coal & Coke Works," which account was continued by the McClure Coke Company, and on September 30, 1895, it showed a balance of $11,944.65, without including any interest thereon. Neither Neel, Stoner, Hurst, Rafferty and Donnelly, McClure & Company, nor the McClure Coke Company made claim to the fund represented in this account, prior to the filing of the bill in this case, but it was set apart as representing the interest of Peter L. Shupe and his successor in interest, William J. Rainey. The only demand made for this fund before the bill in this case was filed was by Gilbert T. Rafferty, and he did not press his claim or assert it in any way in the proceedings before the master. In 1882, Rafferty and Donnelly, with one Ruby, formed a partnership under the name of McClure & Company, for the purpose of selling the output of Rafferty and Donnelly's Works, including that of the Union Coke Works. This company sold the product of the latter concern from that date until 1888 at a profit which the master fixed at the sum of $21,640.82, and during the period from 1888 to 1895, while the McClure Coke Company were operating the works, the same parties sold the product at a profit, as found by the master, of $21,799.99. The master finds that the business of the selling agency as thus carried on by McClure & Company, was in fraud of the other partners of Rafferty and Donnelly, and of the McClure Coke Company, and that the profits realized as above, with interest thereon, should be credited to the Union Coke Works. The settlements made by the other parties in interest with Shupe prior to the sale to Rainey, and with Rainey after his purchase, and up to August, 1883, were based upon a division of the net profits of the business of the Union Coke Works

into sevenths. After October 1, 1895, the McClure Coke
Company made a further settlement with Rainey on the
same basis of one-seventh of the net profits. This left
a period from August, 1883, to August, 1895, for which
no settlement was made in so far as Rainey's interest
in the Union Coke Works was concerned. The master
finds as facts, that the sum of $11,944.65 contained in
the special account, with interest thereon, was due to
the defendant Rainey from the McClure Coke Company,
together with one-seventh of the amounts to be credited
to the Union Coke Works on account of the profits aris-
ing from sales by McClure & Company during the period
from 1883 to 1895, with interest. These amounts, to-
gether with the one-fourth of a small balance set apart
to cover an expense account when the mines were idle,
aggregate $35,688.03.

Counsel for appellants suggest that as the bill in this
case was filed for partition and accounting among co-
tenants, the master and the court below were without
authority to settle the accounts of the partnership. It
is apparent, however, that the relations between the
parties as cotenants of the land and as partners in the
conduct of the business, were so involved with each
other that it would have been impossible to determine
them separately. The principle is well settled that a
court of equity having once acquired jurisdiction, has
power to settle the entire controversy between the par-
ties. In McGowin v. Remington, 12 Pa. 56, Mr. Justice
BELL said (p. 63) : "When once a court of equity takes
cognizance of a litigation, it will dispose of every subject
embraced within the circle of contest, whether the ques-
tion be of remedy or of distinct yet connected topics
of dispute. If the jurisdiction once attaches from the
nature of one of the subjects of contest, it may embrace
all of them, for equity abhors multiplicity of suits."
In Myers v. Bryson, 158 Pa. 246, Mr. Justice MITCHELL
said (p. 255) : "The second prayer (of the bill) is for
an account 'in order that a final settlement of said estate

may be made, and your orators receive whatever they may be entitled to of the same.' This is substantially a prayer for a termination of the trust, settlement and distribution. But even if this had been wanting, a court of equity having taken jurisdiction of the case up to this point and finding it ready for final adjudication, would ordinarily go on under the prayer for further relief, and make an end of the litigation."

Whether the parties to this suit be regarded as co-tenants or as partners, in neither case can the statute of limitations properly be pleaded. Authority for this statement is found in McGowan v. Bailey, 179 Pa. 470, where it was held that the cotenants of a coal mine who had worked it for many years and had received all the proceeds, were trustees for the share of another coten-ant who had not been paid any of the profits, and had made no previous demand for an accounting, and it was determined that they could not set up the plea of the statute as a bar to the right of their cotenant to an ac-count. And in Shelmire's Appeal, 70 Pa. 281, where the partner sought to be charged had frequently acknowl-edged a liability to account and had agreed to two amicable references for the purpose of ascertaining the amount due, it was held, as stated in the syllabus, that "This was a continuing admission of liability to ac-count, so as to suspend the running of the statute of limitations."

In the present case the plaintiffs admitted in the bill that they were liable to account to defendants, and pro-fessed their willingness to do so, and they acknowledged that money was due, and they asked that a master be appointed and an accounting had, in order to determine the amount due. In the face of this admission of in-debtedness, they could not ask that the bar of the stat-ute be set up. They came into court admitting liability and asking the court to determine the amount thereof. They set forth the fact that a fund of $11,944.65 had been set apart in a special account until its ownership

could be determined.   The additional sums which were awarded by the master to appellees, on account of the profits made by McClure & Company, necessarily came into the account in the process of ascertaining the value of defendant's interest in the profits of the business. In the case of Tully v. Felton, 177 Pa. 344, cited by the master, it was held that as long as the matter of accounting between the parties to a profit-saving agreement remains an open one, the statute of limitations will not run.

In the present case counsel for appellant point out that defendant Rainey denied in his answer that he was a partner in the Union Coke Works, and that instead of a one-seventh interest in the whole operation, he claimed to be entitled to one-fourth of the proceeds of the operation on the Shupe tract.   If necessary, however, to a proper disposition of the case, the answer in this respect may be treated as amended.   In Leach v. Ansbacher, 55 Pa. 85, the rule as set forth in the syllabus is as follows: "An amendment to an answer is entirely within the discretion of the court and will never be denied when justice demands it."   The issues involved in this case have been tried at great length, upon their merits, before the master, and we can see no good reason why, if an amendment be necessary to sustain the claim of the defendant, as it is clearly established by the evidence, we should not treat the answer as amended so as to make that evidence clearly admissible.   The title to the property was just as Rainey stated in his answer, and his counsel averred upon the argument that he would have been willing to accept one-fourth of the results from the coal mined from the Shupe tract, as his share of the profits.   But the conduct of the parties had rendered impossible the ascertainment of the value of that interest.   The master found that under the original partnership profit sharing agreement, the parties dealt with the coal not as real estate, but when severed from the fee, as personalty, the profits from which were to be

divided into sevenths. And further, as was demonstrated in the argument of counsel for appellees, the difference in final results between an accounting for one-fourth of the proceeds of the operation on the Shupe property alone, and for one-seventh of the whole operation, amounts to comparatively little. The statement submitted in the argument shows that at the end of the twenty-two years the mining in the two properties was so conducted that the Rainey one-fourth interest was within an acre and a half of the exact proportion which would entitle him to receive the one-seventh of the entire profit upon the whole transaction. The evidence is undisputed that Rainey's predecessor in title, Shupe, was the owner of one-fourth of the coal in that tract, and was entitled to one-fourth of the profits derived from its manufacture into coke, and its sale as such. But it appears just as clearly that, in pursuance of a plan by which the property in which he was interested might be combined with the adjacent property in a single plant, for the purpose of operating to the best advantage, he agreed to accept in payment of, or in lieu of his right to, one-fourth of the profits arising from the use of the coal from his own tract, one-seventh of the profits realized from the entire plant. He certainly had the power to make such an agreement, and the benefit of the contract passed to his grantee, Rainey, and thereafter for years settlement was made by the operating cotenants of the Union Coke Works with both Shupe and Rainey on the basis of their interest in the profits being a one-seventh. This contract, recognized by all parties in interest for so long a period of time, was most properly adopted by the master, in his effort to ascertain the value of the respective interests in the fund now to be distributed. Complaint is made of the large amount found by the master to be due to appellees. But the amount was confined to profits actually realized, and to interest thereon; and the size of the award is due in considerable measure to the interest which has accrued

upon the long deferred payments, which should have
been made when due, by the operating co-tenants and
partners. They cannot therefore justly complain of the
size of the bill which was so greatly increased by their
own delay. It is true that the Frick Coke Company had
nothing to do with these transactions as they occurred.
But through processes of merger it has assumed the lia-
bilities of the companies to which it succeeded, and that
have been merged with it. The master has found as a
fact that Rafferty and Donnelly and McClure & Com-
pany, were chargeable with secret profits for which they
should account to their partners. He further finds that
in June 1888, the McClure Coke Company, a corpora-
tion, took over the business of McClure & Company, and
Rafferty and Donnelly, together with their assets and
liabilities, and that from June, 1888, to October, 1895,
the McClure Coke Company operated the coke works and
manipulated the sales, in such a way that further secret
profits were made during that period, for which that
company upon its own account was chargeable with
secret profits, wrongfully withheld from the other part-
ners in the Union Coke Works. Afterwards the Mc-
Clure Coke Company became merged in and consoli-
dated with the Frick Coke Company, which then as a
matter of law became responsible for all the liabilities
of the McClure Coke Company. The law authorizing a
merger of corporations provides that all debts, duties
and liabilities of each of the constituent corporations
shall attach to the new corporation. We are convinced
that the findings of fact by the master, as affirmed by the
court below, were fully warranted by the evidence, and
in the application of the law thereto we see no error.

The assignments of error are overruled, and the de-
cree of the court below is affirmed.


DISSENTING OPINION BY MR. JUSTICE ELKIN, January
13, 1913:

According to my view the conclusions reached in this

case are erroneous in several particulars. The pleadings have been disregarded and appellant has been made to answer for the faults of individuals with whom it had no connection and from whose acts it derived no benefit whatever. The bill averred that the parties were tenants in common and the answer admits the averment. The bill prayed for partition and an accounting between tenants in common, while the master treated it as a bill for an accounting between partners and opened the door so wide as to require appellant to account for secret profits made by Rafferty and Donnelly, as partners between 1883 and 1888, many years before appellant had anything to do with the operation of the plant, and at a time when Rafferty and Donnelly had no partnership relation with the Frick Coke Company or with the McClure Coke Company. No one has undertaken to explain satisfactorily how this thing can be legally done.

There is not a single averment in the bill upon which to predicate a partnership relation, while on the other hand there are several distinct averments that the parties were tenants in common and that the accounting should be made upon this basis. Rainey himself answered that he was not a party to any agreement by which the land involved in the partition proceeding was to be used and operated in a partnership relation in conjunction with other property. He also averred that he is entitled to one-fourth of the proceeds arising from the profits made in the manufacture of coke, and this upon the theory that he was a tenant in common. In other words, he averred in his answer that he was the owner as tenant in common of one-fourth of the land described in the bill and that there should be an accounting to him for the profits made upon this basis. The issue was thus made up by the parties themselves and it is difficult to see how the master and the courts can entirely ignore the pleadings and try the case upon another theory. The rule is that a party is not allowed to state one case in a bill or answer, and make out a different one by the

proofs: Boone v. Chiles, 35 U. S. 177. The relief afforded by a decree in equity must conform to the case as made out by the pleadings as well as the proofs: Luther v. Luther, 216 Pa. 1. This is an elementary rule, recognized by all authorities, but entirely ignored in the case at bar.

A brief statement of the facts is a sufficient answer to the position taken by the master and approved by the court below and here on the question of secret profits. In the first place, if the parties were tenants in common at the time the bill was filed, and it is so averred in the bill and admitted in the answer, the question of secret profits as it related to a partnership transaction existing at a prior time between different parties, if such a relation ever did in fact exist, could not be considered in this proceeding. The Union Coke Works were managed by Braden Hurst until August 1, 1883, and no question arises in the present case relating to the business prior to that time. From August 1, 1883, to May 1, 1888, Rafferty and Donnelly operated the plant in the interest of the owners and during that entire period sold the coke to McClure & Company, a partnership consisting of themselves and one Rubie. The proofs show that McClure & Company made large profits by purchasing the coke manufactured by the Union Coke Works at one price and selling it in the market at a much higher price. It was contended that Rafferty and Donnelly were partners with the other owners and that they should account for the secret profits thus made. This would no doubt be true as between Rafferty and Donnelly and the then owners, but how these secret profits can be charged against the Frick Coke Company, appellant here, which had no connection with the business until 1895, no one has yet explained, and it is difficult to see how such a liability could arise in the absence of an express contract to account for such wrongdoing and no such contract was either averred or proved. The McClure Coke Company, a corporation created in 1888, took over these

properties and conducted the business down to 1895, when it passed into the hands of the Frick Coke Company. It is nowhere charged, nor was there any attempt to prove, that the Frick Coke Company derived any secret profits from these transactions. Rafferty and Donnelly were the sole beneficiaries of the alleged secret profits. The Frick Coke Company had no connection with the business during any of the periods when these secret profits were alleged to have been made, nor had it any responsibility for the management of the Union Coke Works at that time, nor did it occupy a partnership relation with the parties here interested at any time, and yet as it turns out in the course of the present proceeding, this company is required to bear the burden of the wrongful acts of those with whom it had no business connection, covering a period of twelve years, during all of which time it had no interest in the business, nor had it any responibility for the acts of the parties. And all this is done in the name of equity. I cannot bring myself to believe that this conclusion is warranted either in law or in equity, and certainly not in good conscience. There is nothing in this record to show that the Frick Coke Company became charged with such a burden by the merger of the McClure Coke Company with it, but even if it did assume such a burden as to the McClure Coke Company its responsibility in any event would be limited to the corporate acts of that company, and could not go farther back than the date of its incorporation in 1888. As to the acts of Rafferty and Donnelly during the period from 1883 to 1888 the statute of limitations clearly applies in favor of third parties, who had no connection with them at that time.