## Olmstead v. Wilczynski

*Gunster, Mackie & Murphy*, for plaintiff.
*Frank J. McDonnell*, for defendant.

LEACH, P. J., December 12, 1941.—The bill sets forth that plaintiff gave defendant approximately $6,000 in cash and a diamond ring which belonged to his mother, under the agreement that defendant would marry him and use the money for their joint good and would return the diamond ring on demand. Having secured plaintiff's $6,000, defendant lost interest in the marriage with him, but is keeping the money and the ring. Plaintiff demands return of the money and the ring. Preliminary objections to the bill set forth that plain-

tiff has an adequate remedy at law, that the trusteeship does not sufficiently appear, and that the averments are vague and indefinite.

If the demand was merely for the return of the money, plaintiff would have an adequate remedy at law by action in deceit: Bishoff v. Valley Dairy Co. et al., 302 Pa. 125. However, there is no adequate remedy at law for the return of the particular diamond. An action in replevin would permit defendant to file a bond and keep the ring. The jurisdiction of equity attaches for the return of the diamond ring. When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute.

In McGowin v. Remington, 12 Pa. 56, 60, 61, 63, the rule of law was early set forth as follows:

"As to the first point; the defendant insists that the only remedy is at law. Though the action of replevin is, with us, a broader remedy than in England, lying in all cases where one man improperly detains the goods of another, it is in no instance effective to enforce a specific return of chattels, since a claim of property and bond given is always sufficient to defeat reclamation, no matter what may be the eventual issue of the contest. . . .

"The precise ground of this jurisdiction is said to be the same as that upon which the specific performance of an agreement is enforced, namely, that fruition of the thing, the subject of the agreement, is the object, the failure of which would be but illy supplied by an award of damages: Lowther v. Lowther, 13 Ves. 389. In the application of this rule some difficulty has been experienced. The examples afforded by the English books are usually those cases, where, from the nature of the thing sought after, its antiquity, or because of some peculiarity connected with it, it cannot easily, or at all, be replaced. Of these may be instanced, the title-

deeds of an estate and other muniments of property; valuable paintings: Lowther *v.* Lowther, *supra;* an antique silver altarpiece: Duke of Somerset *v.* Cookson, 3 P. Wms. 389; an ancient horn, the symbol of tenure, by which an estate is held: Pusey *v.* Pusey, 1 Ves. 273; heir-looms: 3 Ves. & B. 18; and even a finely carved cherry-stone: Ambler, 77. Such articles as these are commonly esteemed not altogether, or perhaps at all, for their intrinsic value, but as being objects of attachment or curiosity, and, therefore, not to be measured in damages by a jury, who cannot enter into the feelings of the owner; so too the impossibility, or even great difficulty of supplying their loss, may put damages out of the question as a medium of redress. . . .

"But there is another ground upon which this proceeding may be sustained. In Falls *v.* Reid, the snuffbox was deposited with the defendant, as a member of the society, upon certain terms, to be redelivered upon the happening of certain events. Lord Rosslyn held that under these facts, the defendant was a depositary on an express trust which, upon a common ground of equity, gave the plaintiff title to sue in that Court; and in this he was supported by Lord Eldon, in the subsequent case of Nutbrown v. Thornton. According to the proof in our case, the papers and documents claimed were left with the defendant under the express understanding that they were to be redelivered whenever the plaintiff should see fit to resume the business of his then profession in this city. It is then the case of direct confidence violated—a spell sufficiently potent to call into vigorous activity the authority invoked.

"As to the second question, it is perhaps enough to say, that when once a Court of equity takes cognisance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute."

The above case has been cited many times, one of the last being Bowman v. Gum, Inc., et al., 327 Pa. 403, 412, as follows;

"Equity having assumed jurisdiction of this controversy, that jurisdiction will be retained until justice has been done. As this Court early said in *McGowin v. Remington*, 12 Pa. 56, 63, 'When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the jurisdiction once attaches from the nature of one of the subjects of contest it may embrace all of them, for equity abhors multiplicity of suits.' See also *Myers v. Bryson*, 158 Pa. 246; *Holden v. Bernstein Manufacturing Co.*, 232 Pa. 366; *Hurst v. Brennen*, 239 Pa. 216; *Tide Water Pipe Co. v. Bell*, 280 Pa. 104; *Rosenberger v. Kuesel*, 292 Pa. 184; *Schwab v. Miller*, 302 Pa. 507; *Fleming v. Adamson*, 321 Pa. 28. The application of this principle to the present case requires that jurisdiction of the court should extend to all matters in issue between the parties, properly justiciable, even though some of the matters so determined might not have been originally the subject of jurisdiction in equity."

Now, December 12, 1941, preliminary objections are dismissed and the defendant is ordered to answer within 15 days.