## GUETTEL et al. v. PHILADELPHIA WARWICK CO. et al.

### Civ. No. 4973.

District Court, E. D. Pennsylvania.

Aug. 8, 1945.

Shulman, Shulman & Abrams, of Chicago, Ill., and Morton J. Sablosky, of Philadelphia, Pa., for plaintiffs.

Wolf, Block, Schorr & Solis-Cohen, of Philadelphia, Pa., for defendant Philadelphia Warwick Co.

David Bortin, of Philadelphia, Pa., for defendants Herman M. Watkins and Gabriel Wilson.

Evans, Bayard & Frick, of Philadelphia, Pa., for defendant Tradesmens Nat. Bank & Trust Co.

KALODNER, District Judge.

Plaintiffs, Jennie Guettel and J. C. Kreuger, each own a $250 debenture bond and six shares of stock of the Philadelphia Warwick Company, which owns and operates a hotel-apartment house in the City of Philadelphia. The intervening plaintiff, Philip K. Herr owns $4500 of the debentures of the Philadelphia Warwick Company and 108 shares of its stock. There is presently outstanding a total of $1,967,850 of the debentures and 47,691 shares of its stock. It may be stated parenthetically

there were 24 shares of stock issued for each $1000 of debentures.

Plaintiffs, Guettel and Kreuger, filed a complaint on July 3, 1945 seeking a temporary injunction restraining the Corporation and Watkins and Wilson, two of its officers and principal security holders, as well as the Tradesmens National Bank and Trust Company, indenture trustee, from taking any steps to carry out a plan to modify the terms and conditions of the indenture and from consummating a proposed $1,400,000 mortgage on the hotel property. The complaint asked further equitable relief as will subsequently appear. At the hearing July 30, 1945, the plaintiffs withdrew their prayer for a temporary injunction, and it was agreed by the parties that the matter should be treated as upon final hearing. After the plaintiffs presented their testimony, the defendants moved to dismiss on the ground that a cause of action had not been established.

Upon consideration of the pleadings, testimony, and the arguments of counsel, I make the following findings of fact:

1. The plaintiffs, Jennie Guettel and J. C. Kreuger, are holders of debentures in the principal amount of $250 each and voting trust certificates for six shares of common stock each of the defendant, Philadelphia Warwick Company, hereinafter called the company.

2. The intervening plaintiff, Philip K. Herr, is a holder of debentures in the principal amount of $4500 and voting trust certificates for 108 shares of common stock of the company.

3. Plaintiffs, Guettel and Kreuger, are residents of Illinois. The intervening plaintiff, Herr, is a resident of Pittsburgh, Pennsylvania. Defendant, company, is a corporation of Pennsylvania. The individual defendants are residents of Philadelphia, and the defendant, Tradesmens National Bank & Trust Company, is a corporation of the United States having its principal office and place of business in Philadelphia, Pennsylvania.

4. The company was reorganized in 1936 or 1937 under Section 77B of the Federal Bankruptcy Act, 11 U.S.C.A. § 207, pursuant to an amended plan of reorganization dated January 20, 1936 amending the original plan of reorganization dated June 1, 1935, promulgated by the company which was accompanied by a letter of the company to the holders of the then securities secured upon the property of the company, said letter being dated June 8, 1935.

5. Said letter of June 8, 1935 purported to explain the proceedings, the history of the company and the proposed reorganization plan and had annexed thereto, a statement of Assets and of Liabilities and Capital of February 28, 1935 and a Pro Forma Balance Sheet as at March 1, 1935 after giving effect to the proposed reorganization plan.

6. The individual defendants, Herman M. Watkins and Gabriel Wilson, were not responsible for any of the statements made by the company or other persons in respect to the said original or the said amended reorganization plan of the company.

7. Said letter of June 8, 1935 did not purport to be a part of the original plan, nor did it purport to constitute or contain conditions which would be binding upon the company in respect of the plan that would finally be adopted by the company and approved by the required security holders and by the Court.

8. It was not the intention of the company or of any of the parties in interest, or of the Court, that the said letter of June 8, 1935 or anything other than the terms of the amended reorganization plan should be binding upon the company or any of the parties.

9. Said letter of June 8, 1935 stated, among other things, that the amended plan of reorganization provided for the issuance of unsecured debentures to the amount of two million dollars and Voting Trust Certificates for Common Stock, both of which were to be distributed in specified ratios in exchange for Class B and Class C bonds theretofore outstanding and secured upon the company's property.

10. Said letter of June 8, 1935 also stated that it was considered inadvisable to secure the debentures by a mortgage, not only because it would have a new loan which might be needed for refinancing, but also a new loan which might be needed "otherwise." It was, therefore, contemplated that a new mortgage might be needed for any purpose.

11. Said letter of June 8, 1935 also stated that a Voting Trust was provided in order to prevent practical control by speculators acquiring "less than a majority of the stock". The individual defendants acquired more than a majority of the debentures and stock, in fact, more than eighty percent.

12. Neither in the Amended Reorganization Plan nor in any of the other instruments was there any prohibition against the normal right of the company to borrow money in any amount and secure the same by a mortgage on its property except that notice was required to be given to the debenture holders and if, within a specified time, the holders of twenty-five percent of the debentures outstanding did not object, such mortgage could be made and the Voting Trust Agreement provided in respect to such new mortgage loan that the stock could not be voted by the trustee in favor thereof unless notice were given to and objection not made by the holders of certificates, representing a specified percentage of the stock.

13. The Voting Trust Agreement provided that it could be terminated at any time upon the agreement of the holders of Voting Trust Certificates representing more than fifty percent of the stock of the company held in the Voting Trust. After the individual defendants acquired their debentures and stock, the Voting Trust Agreement was so terminated.

14. There was no evidence that the company did not properly approve a proposed mortgage loan of $1,400,000 to be secured upon its property.

15. The purpose of the company to use the proceeds of the mortgage loan to make payment on account of the principal outstanding debentures or to purchase debentures was not improper or inadvisable.

16. There is no evidence that the proceedings of the company to increase its authorized indebtedness was improper or inadvisable.

17. The amended plan of reorganization provided that the indenture governing the debentures should contain, and it does contain, provisions, among others, for amendment of the terms and conditions of the debentures and indenture with the written consent of the holders of two-thirds of the principal amount of the debentures outstanding.

18. There is no evidence that the proposed amendment of the debentures and indenture of the company is in any way improper or inadvisable or not approved by the holders of the required amount of debentures.

19. Both the amended reorganization plan and the indenture provided that debentures may be purchased by the company and intended that the proceeds of any new loans or refinancing operation might be used to purchase debentures for cancellation or for payment pro rata on all debentures.

20. The proposed mortgage of $1,400,000, on the basis of the assets of the company, taking into account its liabilities and its earnings from October 1, 1935 to June 30, 1945, and all other evidence presented, constitutes a reasonable, financial operation for the company, and such mortgage loan can be supported by the company, in view of the use to be made of the proceeds for the retirement of liability of the company upon the debentures.

21. The terms of the new mortgage are substantially more favorable in that the rate of interest therein specified is four percent per annum, while liability of the company for interest on the debentures is accruing and will continue to accrue at the rate of six percent per annum.

22. There is no evidence that the former officers and directors of the company entered into any scheme with the individual defendants or any one else, or that there was any scheme by the individual defendants or any of the other defendants or any other persons whatever, to enable the individual defendants or any other persons to become the dominant stock and bondholders of the Company nor is there any evidence of any other scheme, as alleged in the bill of complaint.

23. There is no evidence that there was any fraudulent or otherwise unlawful, improper termination of the Voting Trust Agreement.

24. There is no evidence that the sale of the debentures and stock of the company to the individual defendants was for any purpose other than the desire of all persons having to do with the selling to enable them and all other security holders to obtain a price which they regarded as favorable for their debentures and stock; said price being 80½% of par as compared with prior market prices of 43% to 60% of par.

25. There is no evidence of any fraudulent, unlawful or improper proceedings to effect a mortgage on the property of the company, to effect any amendment of the indenture governing the debentures, or to do any other thing in respect to the company.

26. It was not unlawful or improper for the former holders of debentures and Vot-

ing Trust Certificates to sell the same to the individual defendants, and there is no evidence of any unlawful or improper act, scheme or intention in respect to such sale or purchase.

27. There is no evidence of any act, scheme or intention on the part of any of the defendants or any other persons to do anything in their respective capacities as officers, directors, debenture holders, stockholders or otherwise, in respect to the company, its debentures, stock or its interest generally, which may be unlawful or improper.

28. There is no evidence that the purpose of the proposed mortgage loan is not for the benefit of the security holders other than the individual defendants, but on the contrary, the same is for the benefit of all of the debenture holders and stockholders of the company.

29. All of the actions referred to in the proceedings as taken or contemplated to be taken by the company or by its officers or directors or by any of the individual defendants or the trustee defendant were and are lawful and proper and in conformity with and in pursuance of the provisions of and the rights allowed by the amended reorganization plan, the indenture and the debentures issued thereunder and the Voting Trust Agreement.

30. That Tradesmens National Bank and Trust Company, indenture trustee, is not and never has been the agent of Herman M. Watkins and Gabriel Wilson, or of any other officers, directors, stockholders or debenture holders of Philadelphia Warwick Company.

31. That Tradesmens National Bank and Trust Company, indenture trustee, did not co-operate with Herman M. Watkins, Gabriel Wilson, or either of them, in any purchase of debentures or stock or voting trust certificates of Philadelphia Warwick Company.

32. That Tradesmens National Bank and Trust Company, indenture trustee, did not co-operate with any other stockholders, debenture holders, or any other person whatsoever, in the purchase of debentures, stock or voting trust certificates of Philadelphia Warwick Company.

33. That Tradesmens National Bank and Trust Company, as indenture trustee and under the provisions of Article VII and Article VIII thereof, is required to comply with any changes made under said sections, upon proof of compliance with the terms thereof on the part of Philadelphia Warwick Company.

34. That Tradesmens National Bank and Trust Company, indenture trustee, has no connection whatever with the proposed increase of indebtedness of Philadelphia Warwick Company, and is not a necessary party to any such proceedings.

35. That Tradesmens National Bank and Trust Company, indenture trustee, has no connection with any proposed mortgage of $1,400,000, or any other proposed mortgage to be made by Philadelphia Warwick Company.

## Discussion

Since a special meeting of the shareholders of the defendant, Philadelphia Warwick Company, has been called for August 11, 1945 to act upon a proposal to increase the authorized indebtedness of the corporation to $5,000,000, and further since the complainants seek to restrain the corporation from consummating the proposed $1,400,000 mortgage on the hotel property scheduled for settlement August 15, necessity for prompt disposition of the defendants' motions to dismiss precludes an exhaustive discussion.

In support of their application for relief, the plaintiffs urge

(a) that the proposed $1,400,000 mortgage would be prejudicial to the interest of the debenture holders.

(b) that the proposed $1,400,000 mortgage is "unnecessary for corporate purposes" and that a corporation may not borrow funds and mortgage its property when such funds are not necessary for corporate purposes.

(c) that the company's earnings will not permit it to meet annual amortization requirements imposed by the proposed mortgage.

(d) that defendants, Watkins and Wilson, acquired majority of debentures and stock control by "unfair means".

(e) that the defendants failed to make available to the stockholders and debenture holders material and adequate information as to the operations of the company or the value of its securities.

(f) that the termination of the Voting Trust Agreement was unfair and illegal.

(g) that the modification of the terms of the indenture was illegal.

(h) that the debenture holders will suffer deprivation of presently due accumulated interest.

The Findings of Fact adequately dispose of the plaintiffs' contention as above stated. The plaintiffs have utterly failed to substantiate by their evidence the allegations in their complaint. Finally, the plaintiffs' own testimony established that the company intends to use the proceeds of the $1,400,000 mortgage loan to either make payment on account of the principal outstanding debentures or to purchase the debentures by calling for a tender to the company. Of this it might be stated that in conformity with the Amended Plan of Reorganization of 1936, the Indenture Article VII, Section II, gives the company the right to borrow funds on mortgage subject to certain provisions as stated in Finding of Fact No. 12. Also Section V of Article III of the indenture entitled "Redemption from Proceedings of Loans" evidences the original intention in the Amended Reorganization Plan of 1936 to enable the procedure now contemplated by the company with respect to utilization of the proceeds of the proposed $1,400,000 mortgage.

With respect to the proposed mortgage, the directors of the company have after consideration determined that the refinancing is in the best interest of its shareholders. There is no evidence that the directors failed to act in good faith and with diligence, care and skill and honest judgment. It is well settled that the Court will not interfere with the internal management of corporation, and therefore will not substitute its judgment for that of the officers and directors. Bowman v. Gum, Inc., 1937, 327 Pa. 403, 193 A. 271.

Finally, there is no merit in the plaintiffs' contention that debenture holders face loss of accumulated unpaid interest. The record discloses that there has been no change in the original undertaking and liability to pay debenture holders accumulated unpaid interest.

In consonance with the above, I state the following conclusions of law:

1. The debentures, indenture, Voting Trust Agreement, Voting Trust Certificates, and Certificates of Stock, are the instruments which, in addition to the applicable laws of the Commonwealth of Pennsylvania, fix the rights and obligations of the parties under the reorganization, these instruments having been made and issued under the Plan, and the provisions of the latter having been merged therein.

2. The instruments and certificates mentioned above are consistent with and conform to the provisions of the Amended Plan of Reorganization.

3. The proposed mortgage loan of $1,400,000 of the company, the proposed amendment of the Debentures and Indenture, the proposed increase of the authorized indebtedness to $5,000,000, and the termination of the Voting Trust, were and are lawful and proper and within the rights and powers of the parties exercising or proposing to exercise the same, under the laws of the Commonwealth of Pennsylvania, and the said instruments and certificates made or issued under the reorganization plan.

4. The burden of proof of any unlawful act, committed or imminent, by any of the parties defendant, or any other persons in connection with any of the proceedings mentioned above, rested upon the plaintiffs, and the plaintiffs have failed to meet such burden of proof.

5. The transaction by which the individual defendants acquired a large majority of the Debentures or Voting Trust Certificates or Stock of the company consisted merely of a sale by the prior holders thereof to the individual defendants.

6. The individual defendants had the lawful right to purchase Debentures and Voting Trust Certificates of the company to any amount, and the sellers had the lawful right to sell the same, and thereafter the purchasers possessed all the rights, as owners of said securities, given by law and by the instruments and certificates mentioned above.

7. The individual defendants, as the purchasers of the Debentures and Voting Trust Certificates, lawfully and properly obtained the rights incident to the amount of such respective securities which they acquired, namely, as the holders of an amount in excess of eighty percent of each of said classes of security.

8. Plaintiffs failed to meet the burden of proof, in that they failed to produce any evidence, of any scheme, fraudulent or otherwise, on the part of any of the defendants, or any officers or directors or others connected with either of the defendant corporations, in respect to the company or any of its debentures, stock or otherwise.

9. The plaintiffs failed to meet the burden of proof, in that they failed to present any evidence, that the individual defendants have used, or propose to use, any of the assets of the corporation for their individual use or benefit, or for the individual use or benefit of any other person or persons, but, on the contrary, the evidence presented by the plaintiffs establishes that any use of the assets of the corporation will be and are required to be for the pro rata benefit of all debenture holders and the pro rata benefit of stockholders, according to the respective legal priorities of said two classes of securities.

10. Plaintiffs have failed to meet the burden of proof, in that they did not produce evidence, that the proposed mortgage loan of $1,400,000 was not the exercise of sound judgment and was in violation of any of the provisions of the applicable instruments or of law, but, on the contrary, the evidence produced establishes that said proposed mortgage loan can be readily supported by the company, and will constitute a reasonable financial operation.

11. The letter of January 8, 1935, accompanying the original proposed Plan of Reorganization, did not constitute representations by the company, but only a statement of the purposes and an analysis of the proposed terms of the Plan.

12. Plaintiffs have failed to meet the burden of proof, in that they have failed to establish, that any statements contained in the company's letter of January 8, 1935 were in fact then false, or now not true, or that there has been any violation of any such statements.

13. Plaintiffs have failed to meet the burden of proof, in that they have failed to establish by any evidence that there has been any fraudulent or other scheme or violations of any rights of the plaintiffs or any persons in the same position as the plaintiffs, or that there has been or is imminent any wrongdoing of any kind by any of the defendants, as alleged in their Complaint or otherwise.

14. That no cause of action has been established against Tradesmens National Bank and Trust Company, indenture trustee.

15. That Tradesmens National Bank and Trust Company, indenture trustee, is not a necessary party to any transactions involving the indenture dated as of March 2, 1936, under which debentures have been issued to holders of old B and C Bonds of Philadelphia Warwick Company.

16. That Tradesmens National Bank and Trust Company, indenture trustee, has not done or permitted any acts, or participated in any acts, on the part of the Philadelphia Warwick Company, or any of its officers, directors, stockholders or debenture holders, with respect to a proposed increase in indebtedness or the execution of a mortgage in the sum of $1,400,000 by said Philadelphia Warwick Company.

In accordance with the above, the plaintiffs having failed to establish a cause of action, the defendants' motions to dismiss must be and they are hereby granted; plaintiffs to pay the costs.

An order may be submitted in accordance with this opinion.