# Lehigh & Wilkes-Barre Coal Co. *v.* Pittston Coal Mining Co., Appellant.

*Equity—Clean hands—Mines and mining—Mining over line—Diversion of water—Maxims.*

1. A coal mining company, a defendant in an equity suit, cannot allege that plaintiff, another coal mining company, seeking an injunction to restrain the diversion of water onto its lands, does not come into court with clean hands, where plaintiff's predecessor in title, fifty years before, had mined over defendant's line.

2. One coal mining company has no right to collect the surplus water in its mine and discharge it through a tunnel or ditch onto another coal mining company's land, causing injury thereby.

3. The maxim "sic utere tuo ut alienum non laedas," applies in such a case. The rule in Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126, does not apply.

*Equity—Amendment of bill—Mines and mining—Discretion.*

4. A bill for an injunction to restrain the discharge of water from a mine on neighboring property through a tunnel may be amended after the evidence has been taken and the case submitted, by the addition of an averment that a ditch had been dug within and along the side of the tunnel.

5. The question of allowing such an amendment is for the reasonable discretion of the trial court.

6. In such case, plaintiff is entitled to relief from the water which came upon its land through a tunnel, whether in a ditch therein or not.

Argued April 12, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 30, Jan. T., 1927, by defendant, from decree of C. P. Luzerne Co., in equity, No. 10, May T., 1919, on bill in equity, in case of Lehigh & Wilkes-Barre Coal Co. v. Pittston Coal Mining Co. Affirmed.

Bill for injunction. Before FULLER, P. J.
The opinion of the Supreme Court states the facts.
Decree for plaintiff. Defendant appealed.

*Error assigned,* inter alia, was decree, quoting record.

*F. W. Wheaton,* with him *M. J. Mulhall* and *W. A. Valentine,* for appellant.—Plaintiff was not in equity with clean hands: Wegliam v. Killefer, 215 Fed. 168; Orne v. Coal Co., 114 Pa. 172; Reynolds v. Boland, 202 Pa. 642.

The amendment to plaintiff's bill was improperly allowed: Thompson's App., 126 Pa. 367; Brewing Co. v. McHenry, 242 Pa. 522; Caveny v. Curtis, 257 Pa. 575; Cassidy v. Knapp, 167 Pa. 305; Yetter v. R. R., 206 Pa. 485; Hoofstitler v. Hostetter, 172 Pa. 575; Berlin Smokeless C. & C. Co. v. Rohm, 272 Pa. 24.

The maxim "sic utere tuo ut alienum non laedas," invoked by plaintiff, is not applicable to this case: Pa. Coal Co. v. Sanderson, 113 Pa. 126; Kauffman v. Griese-

mer, 26 Pa. 407; Strauss v. Allentown, 215 Pa. 96; Rielly v. Stephenson, 222 Pa. 252; White v. R. R., 46 Pa. Superior Ct. 372; Flaherty v. Ry., 63 Pa. Superior Ct. 622.

*Evan C. Jones,* with him *Gilbert S. McClintock,* for appellee.—The nearest case in point to our case is Locust Mountain Coal Co. v. Garrell, 9 Phila. 247. The facts are very similar to ours and the same principle is involved.

OPINION BY MR. JUSTICE WALLING, May 9, 1927:

Plaintiff and defendant, coal mining companies, own and operate adjoining mines in Hanover Township, Luzerne County, that of the latter being on the higher elevation. In 1918, defendant drove a tunnel through rock some eight hundred and fifty feet on its own land to reach another body of coal, and reaching a space of broken rock about twenty feet from plaintiff's line. The tunnel was driven on a slightly ascending grade, while a ditch within and along the side of the tunnel was constructed on a slightly descending grade, ending lower than where it began. This caused, and was intended to cause, the surplus water from defendant's open mine, as well as that collected along the tunnel, to flow forward and be discharged among the broken rocks. This saved defendant the expense of pumping the water to the surface, which theretofore had been, and practically could be, done. The water so discharged, however, flowed upon and into plaintiff's mine, causing great damage and expense. To restrain this flow of water upon its premises, plaintiff, soon after the tunnel was finished, filed this bill in equity, to which a responsive answer and replication were filed and testimony taken. Because of unforeseen delays, including the death of the chancellor, and of one of defendant's solicitors, a final decree, granting plaintiff the relief prayed for, was entered ap-

proximately six years after the bill was filed; therefrom defendant brought this appeal.

The facts found, based on ample proof, support the decree and the record is free from error. About 1872, the mining operations of plaintiff's predecessor extended over the line and into defendant's land, leaving an open space, later filled by broken rock as the result of a cave-in, where defendant discharges the water here complained of. Appellant urges that by reason of such alleged trespass plaintiff does not come into court with clean hands and cannot maintain this bill. In Locust Mountain Coal & Iron Co. v. Garrell et al., 9 Phila. 247, Mr. Justice AGNEW holds that such trespass by the lower owner did not justify the other's act in turning the water into the former's mine and enjoined him from so doing. No appeal from that decision was taken and so far as we are aware it has never been departed from. In the early history of anthracite coal mining, boundary lines were not as definitely ascertained as in more recent years and the so-called trespass in the instant case may have been unintentional and consented to or compensated for. We cannot assume it was such as to deprive plaintiff of redress for the wilful act of defendant committed fifty years later. The rule applicable to this feature of the case is well stated by the learned chancellor as follows: "It is the law that if his neighbor has trespassed upon his property by mining over the line, it is [still] the duty of defendant to conduct its own mining operations in the usual and proper manner, and not to take advantage of his neighbor's trespass by diverting water upon the complainant which would not otherwise have flowed there." The injury here complained of did not result from the plaintiff's original act of taking out the coal; had it done so, it would have been damnum absque injuria.

The bill as first filed complained of the water being discharged in plaintiff's mine by means of a tunnel, but made no mention of the ditch therein. After the evi-

dence was all taken and submitted to the chancellor, but prior to his decision, he suggested, apparently out of abundant caution, that the bill be so amended as to specifically mention the ditch. This was done in due course and upon notice to defendant, who filed an answer thereto, but, although given an opportunity, offered no additional testimony. By leave of court, granted six months after final decree, defendant took an exception nunc pro tunc to allowance of the amendment, and now urges that it was filed too late. The question of such amendment is for the reasonable discretion of the trial court (Berlin Smokeless C. & C. Co. v. Rohm, 272 Pa. 24); but whether properly exercised here we need not stop to consider, for the original bill was sufficient and the amendment made no material change. It was the same water running through the same tunnel, discharged in the same way, and describing the ditch therein was a mere matter of detail. Plaintiff was entitled to relief from the water which came into its mine through the tunnel, whether in a ditch therein or not.

Finally, defendant claims the right to collect the surplus water in its mine and discharge it through a tunnel or ditch upon the plaintiff's land, regardless of the injury caused thereby, on the assertion that the time honored maxim, "Sic utere tuo ut alienum non laedas," is not applicable to coal mining in Pennsylvania. For this unique proposition the case of Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126, is cited. That case, however, was as to the pollution of a stream and not changing the natural course of surface water. Moreover, it was between the rights of a coal mining company, supplying a prime necessity to the public, and a private landowner; whereas, the instant case is between coal mining companies, who stand on an equal footing, each supplying coal to the public. In the very recent case of Penna. R. R. et al. v. Sagamore Coal Co. et al., 281 Pa. 233, this court, speaking through Mr. Justice SCHAFFER,

denies the right of a mining company to pollute a stream used as a water supply by the public, or by a public service corporation.

The right to use land for agricultural or mining purposes in the usual and proper manner, although it may result in some additional flow of surface water upon the land of an adjoining owner, is undoubted, but the right to collect such water and conduct it upon another's land through an artificial channel cannot be sustained. While proper farming or mining may affect the flow of surface water, yet, when it departs it must be in a natural course and not collected together and cast upon lower land by artificial means: Kauffman v. Griesemer, 26 Pa. 407; Locust Mountain Coal & Iron Co. v. Garrell et al., supra; Strauss v. Allentown, 215 Pa. 96; Rielly v. Stephenson, 222 Pa. 252. "A mine owner may not construct a drain emptying into the neighboring mine": Barringer and Adams on Mines & Mining (1st ed.) 630. It is the natural drainage only that the owner of the lower field is under the servitude of receiving: Scots Mines Co. v. Leadville Mines Co., 34 Law Times Reports 34. The case of Smith v. Kendrick, 62 English Common Law Reports 515, contains an interesting discussion of the rights and liabilities of the owners of adjoining mines with reference to surface water. See also Gould on Waters (3d ed.) p. 570.

The fact here is well found that defendant's mining was improperly conducted in that the ditch in the tunnel was constructed on a descending grade toward plaintiff's land, when it should have been on an ascending grade so as to drain the water back into defendant's sump or pool, that the surplus might be pumped to the surface, as formerly, and not discharged into plaintiff's mine. This improper grade of the ditch and the fact that, as originally constructed, its outlet came to plaintiff's property by an opening driven through solid coal or rock (although later changed) establish defendant's

intent to rid itself of surplus water at plaintiff's expense.

The decree is affirmed and appeal dismissed at cost of appellant.