Trabue, Appellant, *v.* Walsh.

Argued January 16, 1935.  Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Robert P. Shick,* for appellant.

*Maurice W. Sloan,* with him *Stanley B. Rice* and *Maurice W. Sloan, Jr.,* for appellee.

OPINION BY MR. JUSTICE KEPHART, March 25, 1935:

Appellant brought an action in the court below to recover commissions amounting to $200,000 on a proposed sale of stock of the Home Life Insurance Company, of which appellee was president. A compulsory nonsuit was entered because appellant failed to sustain his claim by competent evidence, and the court in banc refused to take off the nonsuit. Appellant's statement averred that Walsh, as president, James L. and Daniel Durkin owned the majority and controlling stock of the Home Life Insurance Company of America; that in January, 1930, Walsh requested and authorized appellant "to sell for him, the defendant, and his associates, James L. Durkin and Daniel Durkin, the capital stock of the Home Life Insurance Company of America at the price of three and a half million dollars for the outstanding issue thereof. [Later this sum was increased to four million dollars, on which appellant alleged he was to be paid a commission of 5%.] That W. J. Williams, president of the Western and Southern Life Insurance Company, agreed to purchase for four million dollars in cash the entire outstanding capital stock of the Home Life Insurance Company owned or controlled by the defendant and his associates, James L. Durkin and Daniel Durkin. That defendant, on being appraised by the plaintiff of the acceptance of the president of the Western and Southern Life Insurance Company, refused to sell the stock at the price agreed on." All these transactions were oral.

The record shows a rather disturbing condition. Appellant when called to testify stated that Walsh had

authorized him to sell the "Home Life Insurance Company" and repeated that statement later. At no time did he state that there had been an offer or an acceptance of a proposed sale of the stock of that company. His counsel, realizing the dilemma in which his client had placed him, moved the court to amend the statement so as to read: "to sell all the business of the Home Life Insurance Company of America, including the capital stock." The court below refused to permit an amendment to be made. Appellant testified, however, under objection that he had a purchaser for the "Home Life Insurance Company," stating that it was the "Western and Southern Life Insurance Company of Cincinnati" that would purchase the company; that he, appellant, dealt with Williams, president of the company, and was offered by him four million dollars for the Home Insurance Company. This offer was communicated to Mr. Walsh who refused to accept it, stating that he did not know what he would do with the money if he sold the company.

Without discussing the many assignments of error relating to trial mistakes, we must first consider the action of the court in refusing to permit an amendment to be made to the pleadings. Without this amendment plaintiff's case unquestionably fell for lack of proof and we need not consider further what would have happened had the amendment as offered been permitted.

Pleadings may be amended at any stage of the case. The matter is entirely within the discretion of the trial judge, but will generally be permitted when it does not violate any law or prejudice the rights of the opposing party. The allowance of an amendment rests in the reasonable discretion of the court and in the absence of plain error its action will not be reversed: Hileman v. Hileman, 172 Pa. 323; Lehigh & Wilkes-Barre Coal Co. v. Pittston C. M. Co., 289 Pa. 492; Berlin S. C. & C. Co. v. Rohm, 272 Pa. 24; 49 Corpus Juris 474, see note.

Whether refusing to permit an amendment to be made constitutes an abuse of discretion depends on the circum-

stances of each case. The court to which the application is made must take into consideration the substantial rights of the parties and not act arbitrarily in refusing to permit the amendment. Where the cause of action is not changed and the opposing party is not prejudiced the request will generally be allowed, but where a case is set for trial and the amendment would have the effect of unduly prolonging the trial of the case, or there is a possibility of the loss of the testimony of material witnesses because of death, absence, or other causes, the court ordinarily will not abuse its discretion in refusing to permit an amendment. Here the proposed change introduced new matter and stated an entirely new cause of action. It, in substance, authorized the sale of the business of the Home Life Insurance Company. It was exceedingly comprehensive and included many diversified accounts. Corporate authority must be shown to authorize such action. The amendment involved a much wider field for investigation and a much larger scope for proof. It was requested when the case was on trial, more particularly after plaintiff's two sole witnesses who lived out of the State had testified by deposition to the statement as filed.

This was the third amendment that had been offered and to each of the former statements appellant swore the commission was for a sale of stock. Appellant for one year knew from the deposition that in all probability he would be forced to face this very condition, as will be noted from the testimony of his two material witnesses called to support his claim. Moreover, if there was any one who should know what his contract was, it was the plaintiff in the case. The evidence was vital, and when the court below refused the offer plaintiff could have taken a voluntary nonsuit and again started his case with proper pleadings.

After reviewing the entire record we are satisfied the court below did not commit error in refusing the motion. Defendant followed his objections throughout the trial based on this ground, and at the conclusion of the plain-

tiff's case asked for a compulsory nonsuit. As the record now stands it is entirely barren of any evidence to support the plaintiff's claim that he was to sell the stock owned by the defendant and the Durkins to Williams for the sum of four million dollars as averred in his statement. Appellant relied on testimony taken by deposition of Williams, president, and Biscay, advertising manager of the Western and Southern Life Insurance Company of Cincinnati to sustain his contention that this company had agreed to buy the capital stock of Walsh and the Durkins in the Home Life Insurance Co. of America for $4,000,000, but Williams categorically denied that he had ever offered to purchase the stock at any price, or that he ever thought of doing so, or that his company could pay four million dollars even if it had been offered. The only negotiation in regard to the sale of the Home Life occurred in Philadelphia, when plaintiff, Williams, Biscay and Durkins were present, but this conversation did not look to a purchase of the company, but rather to a reinsurance of the Home Life business. Biscay was not only a hostile witness but a decidedly adverse witness, and did not support plaintiff's claim.

Under all the circumstances the court did not commit error in refusing to grant the amendment, and the other assignments need not be considered.

Judgment affirmed.