Bowman *v.* Gum, Incorporated, et al., Appellants.

404

Argued April 23, 1937. Before Kephart, C. J., Schaffer, Maxey, Drew, Linn, Stern and Barnes, JJ.

*Daniel C. Donoghue,* with him *Walter T. Fahy,* for appellants.

*Harry Shapiro,* for appellee.

OPINION BY MR. JUSTICE BARNES, July 7, 1937:

This is the second appeal of the defendants\* to this Court in the present case. A statement of the facts of this litigation is contained in the opinion of Mr. Justice LINN, speaking for this Court, in *Bowman v. Gum, Incorporated, et al.,* 321 Pa. 516, but it is necessary to repeat them in part, so that the issues here involved may be understood.

The proceeding was instituted by a stockholder's bill for the appointment of a receiver for the defendant, Gum, Incorporated, a Pennsylvania corporation (hereafter called Gum). The company was incorporated on June 7, 1932, for the purpose of manufacturing and selling chewing gum, succeeding to a business of the same character conducted by the plaintiff individually.

---

\* The defendants, who are here the appellants, as in the first appeal to this Court, are Gum, Incorporated; Sweet's Laboratories, Inc.; Franklin V. Canning; S. J. Hamilton; Walter T. Fahy and John O. Barker.

The defendant Gum is a solvent corporation and had total assets on August 31, 1936, of approximately $300,000.

In a general way the difficulties of this once well managed corporation are due to dissensions between two interests, each owning one-half of its capital stock, and each determined to impress its will upon the management of the corporation. A deadlock has resulted in corporate affairs due to the inability of the factions to agree upon the source from which gum base, the principal ingredient used in the manufacture of chewing gum, should be purchased, and the price to be paid therefor.

Three of the individual defendants, namely, Canning, Hamilton and Barker, are financially interested in Sweet's Laboratories, Inc. (hereafter called Sweets), a corporation which manufactures and sells gum base. They are directors of Sweets, and at the same time Hamilton and Barker hold directorships in Gum. It is from Sweets that Gum has purchased its base since its organization, with the result that it has become the largest customer and outlet for its product.

In 1936, plaintiff, who was then the president of Gum, as well as the owner of one-half of its stock, began to experiment with bases made by other companies, procurable at less cost. This action, which threatened the business of Sweets, was met by retaliatory measures on the part of defendants, resulting in the ouster of the plaintiff as president, and the assumption of the management of the company by Hamilton and Barker.

The issue between the two factions is whether Gum must purchase its requirements of base exclusively from Sweets at a price fixed by the latter, or whether it may obtain its supplies in the open market on a competitive basis.

It is contended that the reason for Sweets' investment in the shares of Gum, and the extension of a large credit to the company was that all base used by Gum would be purchased from Sweets, and this understanding was ac-

cordingly incorporated into the minutes of the organization meeting of directors held June 7, 1932. The plaintiff, on the other hand, contends that this resolution was conditioned upon an oral agreement with Sweets that the price charged Gum would be no greater than that prevailing in the open market for a similar quality base. He asserted that the company can obtain its requirements of gum base from a concern called the Dreyfuss Company, whose product is superior in quality to that supplied by Sweets, at the price of 20 cents a pound as against 34 cents a pound charged by Sweets. As the parties were unable to adjust their differences, resort was had to this litigation.

The plaintiff filed this bill alleging fraudulent mismanagement by Hamilton and Barker and a conspiracy by the several defendants to control and operate Gum for the sole benefit of Sweets, resulting in irreparable injury to the corporation and its shareholders. The court below after a preliminary hearing appointed a temporary receiver for Gum, but the order making the appointment was on appeal vacated by this Court. It was our opinion that while the evidence failed to sustain the charges of conspiracy, it did indicate that the dissensions among the shareholders and their inability to break the deadlock possibly made out a case within the *Business Corporation Law* of 1933, P. L. 364, sections 1107-9. The record was therefore remitted for further proceedings, without specifically limiting the parties or the court below, if the plaintiff requested leave to amend his bill, in order to state a cause of action within the applicable sections of the Business Corporation Law.

Upon the return of the record to the court below, and before plaintiff filed a petition to amend his bill, a directors' meeting of Gum was held on July 9, 1936. On that day the directors of the company were six in number. S. J. Hamilton, John O. Barker, and Walter T. Fahy were representatives of Sweets upon the board, and Harold J. Conner, J. Warren Bowman (the plain-

tiff) and William B. Rudenko were directors representing the interest of plaintiff. All directors were present at the meeting. Plaintiff presented a resolution directing the officers to make no further purchases of gum base from Sweets until the price charged therefor was reduced from 34 cents to 20 cents a pound, and that, until such reduction was made, all base be purchased from the Dreyfuss Company. The vote upon the resolution followed factional lines, as Conner, Bowman and Rudenko voted for the resolution, while Hamilton, Barker and Fahy voted against it. Mr. Rudenko thereupon moved that the votes of Hamilton and Barker be disregarded as both were pecuniarily interested in Sweets and were disqualified to vote upon the resolution. Mr. Fahy, as chairman of the meeting, declined so to rule, held the vote to be a tie, and the resolution lost. An objection to the ruling was noted upon the minutes of the meeting, it being contended by plaintiff that the resolution had been carried by a vote of three in favor to one against it. The company continued its purchases of gum base from Sweets at the price of 34 cents a pound.

On September 29, 1936, the plaintiff filed an amended bill, praying for relief under the pertinent sections of the Business Corporation Law. In due course the defendants answered to the merits. On the same day that the amended bill was filed a rule was granted upon the defendants to show cause why a preliminary injunction should not issue, enjoining further purchases of gum base from Sweets. It came before the Court for hearing on October 2, 1936, and on December 28, 1936, the court below entered a decree directing ". . . That Gum, Incorporated, its officers, agents and employees be, and they are hereby enjoined and restrained from purchasing such base as is needed for the manufacture of their product from Sweet's Laboratories, Inc."

The defendants have appealed to this Court from the entry of that decree, contending (1) the plaintiff should not have been permitted to amend his bill; (2) the de-

cree constitutes an improper interference with the internal management of a solvent corporation; (3) the plaintiff should have been required by the court to furnish security when the restraining order was entered.

We need not discuss at length the complaint of the defendants that it was error to allow the plaintiff to amend his bill. The right to amend is a broad one. As the present Chief Justice said in *Trabue v. Walsh,* 318 Pa. 391, 393: "Pleadings may be amended at any stage of the case. The matter is entirely within the discretion of the trial judge, but will generally be permitted when it does not violate any law or prejudice the rights of the opposing party. The allowance of an amendment rests in the reasonable discretion of the court and in the absence of plain error its action will not be reversed: *Hileman v. Hileman,* 172 Pa. 323; *Lehigh & Wilkes-Barre Coal Co. v. Pittston C. M. Co.,* 289 Pa. 492; *Berlin S. C. & C. Co. v. Rohm,* 272 Pa. 24; 49 Corpus Juris, 474, see note."

The contention of the defendants in this regard is without merit, because the amendments are well within and germane to the purposes for which we remitted the record, as clearly appears from the opinion of Mr. Justice LINN. We do not regard it as a reversible error that the plaintiff was not required to pay the costs incurred prior to amendment as a condition of the allowance of the petition for amendment. While such requirement is generally made, the matter is entirely within the discretion of the trial judge, and, in the absence of gross and manifest error, the exercise of that discretion will not be disturbed upon appeal: *Hileman v. Hileman,* supra.

Whether the decree of the court below constitutes an improper interference with the internal management and conduct of the business of Gum appears to be the principal contention of defendants. The rule of law is too well settled to be questioned,—that there should not be substituted in corporate management the wisdom and

judgment of a chancellor for the discretion and skill of the directors elected by the shareholders to manage the corporation. It is not our intention to depart from the salutary principle that "courts of equity will not interfere with the internal management of corporations by means of suits brought by stockholders against directors, officers or other stockholders": Pomeroy's "Equity Jurisprudence," Volume III, p. 2520, approved by this Court in *Whyte v. Faust*, 281 Pa. 444, where we said further (p. 448) : "It is also the prevailing and general rule that a court of equity will not practically remove corporate officers by enjoining them from performing any of their customary duties." See also *McDougall v. Huntingdon & Broad Top R. & C. Co.*, 294 Pa. 108.

However, such is not the proper approach to the present controversy. The decree does not, in our opinion, restrain the officers of the company from performing their customary and proper duties. The issue here presented is more fundamental in its scope, and involves the question whether directors financially interested in a contract or transaction before the corporation, are disqualified to act or vote by reason of such self-interest.

A director is not per se disqualified from voting upon matters in which he has a financial interest either direct or indirect. However, his participation in such a vote will be closely scrutinized, and if it appears that the director availed himself of his position to further his personal interests rather than the welfare of the company, action predicated upon that vote may be rescinded or restrained at the suit of those injured thereby. In *Schmid v. Lancaster Avenue Theatre Co.*, 244 Pa. 373, a lease of a theatre property was held by us to be voidable at the suit of a shareholder, because certain directors who had voted in favor of the leasing were at the same time interested in the lessee corporation.

It is not meant to be intimated that the same person may not legally and properly act as a director in two corporations, even when dealing with each other. Busi-

ness convenience many times requires interlocking directorates, and if the directors so selected faithfully perform the duties reposed in them, the shareholders are benefited rather than harmed thereby. See *Mercantile Library Hall Co. v. Pitts. Library Assn.*, 173 Pa. 30.

Were Barker and Hamilton disqualified by reason of their pecuniary interest in Sweets? The court below decided that their votes should not have been received in determining whether the resolution of July 9, 1936, was adopted. It found that they had "an adverse interest because of their connection with the ownership of Sweet's Laboratories, Inc.," and accordingly "were not qualified or competent to vote on the resolution of the board of directors of July 9, 1936." It concluded that the resolution "was duly adopted by the board of directors of Gum, Incorporated, and is valid and binding upon the corporation and its officers."

We are in accord with this determination, as the evidence supports these findings and the conclusions based thereon. No resolution of a former board of directors ordering that the company's future purchases should be made exclusively from one source is binding upon a subsequent board, unless there is some contractual obligation which renders such resolution enforceable. Such a contract has not been established in the present case. Hence any effort of the officers or agents of Gum at this time to purchase base from Sweets contrary to the resolution of July 9, 1936, is an invalid and improper act, and restrainable in equity.

Moreover, it is evident from the adjudication of the court below that the restraining order was granted to maintain the real status quo of Gum until final hearing. The power to grant relief in proper cases would be incomplete if the dominant faction within the corporation were permitted to dissipate the company's assets while the affairs of the company were sub judice. It is desirable that, during the pendency of the present litigation, the affairs of the corporation be held as nearly as

possible intact until final decree. The company should not be required to pay during the interim a premium for its gum base, if it can obtain elsewhere supplies of the same quality at less cost, *for the sole reason* that several of its directors and stockholders are the owners of, or financially interested in the concern that manufactures and sells the gum base to the corporation. While in *form* the restraining order may appear to change the existing business practice of Gum, in *substance* it preserves the status which alone will safeguard the company's assets during the progress of the litigation.

Equity having assumed jurisdiction of this controversy, that jurisdiction will be retained until justice has been done. As this Court early said in *McGowin v. Remington,* 12 Pa. 56, 63, "When once a court of equity takes cognizance of a litigation, it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the jurisdiction once attaches from the nature of one of the subjects of contest it may embrace all of them, for equity abhors multiplicity of suits." See also *Myers v. Bryson,* 158 Pa. 246; *Holden v. Bernstein Manufacturing Co.,* 232 Pa. 366; *Hurst v. Brennen,* 239 Pa. 216; *Tide Water Pipe Co. v. Bell,* 280 Pa. 104; *Rosenberger v. Kuesel,* 292 Pa. 184; *Schwab v. Miller,* 302 Pa. 507; *Fleming v. Adamson,* 321 Pa. 28. The application of this principle to the present case requires that jurisdiction of the court should extend to all matters in issue between the parties, properly justiciable, even though some of the matters so determined might not have been originally the subject of jurisdiction in equity.

Manifestly it was error for the court below to make the restraining order of December 28, 1936, without providing that security be entered by plaintiff in accordance with the requirements of the Act of May 6, 1844, P. L. 564, and of our Equity Rule 39. See *Baur v. Wilkes-Barre Light Co.,* 259 Pa. 117; *Mintzer v. Turn-*

*bach,* 113 Pa. Superior Ct. 113. While it was error on the part of the court below to grant what was in effect a preliminary injunction unless there was furnished a bond with sufficient surety as required by law, we feel that the defendants will be indemnified for all damages that may be sustained by them by reason of the restraining order, if we remit the record to the court below with directions that the usual bond to satisfy the requirements of the Act be filed by plaintiff, before the restraining order, as modified herein, becomes effective. While the ignoring of acts of assembly and rules of court is not to be encouraged, little if any actual damage has been sustained by the defendants from the failure to require security, as the order of the court below was operative for a few days only before a supersedeas was granted.

The majority of this Court is of opinion that the conclusion we have reached is consonant with the views expressed at the time this case was first before us. The disposition now made is intended primarily to maintain the status of the corporation until final hearing and decree, whether that be the dismissal of the bill, or an order appointing a receiver to liquidate the corporation under the provisions of the Business Corporation Law. Apparently it is necessary to modify the decree of the court below to make it accord with our determination of the present questions. Therefore the following decree is herewith entered: IT IS ORDERED, ADJUDGED AND DECREED: That Gum, Incorporated, its officers, agents and employees be and they are hereby enjoined and restrained from purchasing such base as is needed for the manufacture of their product from Sweet's Laboratories, Inc., while a similar quality base can be obtained from any other manufacturer at a price less than that charged by Sweet's Laboratories. Inc. PROVIDED that this order shall not become effective until plaintiff shall enter in the court below a bond with sufficient sureties to be approved by the court, and in

such amount as the court shall fix, conditioned to indemnify the defendants for all damages that they may sustain by reason hereof.

The assignments of error are overruled. The decree of the court below is modified, and as modified is affirmed, costs to abide the final decree.

DISSENTING OPINION BY MR. JUSTICE LINN:

I cannot concur in the majority opinion because in my judgment it extends beyond reasonable limits the scope of the rule binding the courts not to interfere with the internal management of the affairs of a solvent business corporation. In *Republican Mountain Silver Mines v. Brown,* 58 Fed. 644, 647, the rule was stated as follows by THAYER, J.: "Corporations are in a certain sense legislative bodies. They have a legislative power when the directors or shareholders are duly convened that is fully adequate to settle all questions affecting their business interests or policy, and they should be left to dispose of all questions of that nature without applying to the courts for relief. A stockholder in a corporation cannot successfully invoke the powers of a chancery court to control its officers or board of managers, or to wrest the corporate property from their charge through the agency of a receiver, so long as they neither do nor threaten to do any fraudulent or ultra vires acts, and so long as they keep within the limits of by-laws which have been prescribed for their governance. If in either of the cases last specified a stockholder is nevertheless dissatisfied with the business policy that is being pursued, or the methods of corporate management, he must seek redress within the corporation, in the mode prescribed by its charter and by-laws, rather than by an appeal to the court." Our prior decisions have applied that rule: *Hlawati v. Maeder-Hlawati Co.,* 289 Pa. 233, 137 A. 235; *Hall v. City Park Brewing Co.,* 294 Pa. 127, 133, 143 A. 582; compare *Schipper v. Economy Coal Co.,* 277 Pa. 356, 121 A. 193. The record shows no fraud, no

ultra vires act and no violation of any by-law. In this state in which general equity jurisdiction is subject to some statutory limitation *(Whyte v. Faust,* 281 Pa. 444, 127 A. 234; *Cella v. Davidson,* 304 Pa. 389, 156 A. 99) it is important that the scope of the rule should not be extended.

When the case was here before we said: "We have, then, a solvent corporation conducting a manufacturing business that has been very successful. Half the shares are held by the plaintiff and half by Sweet [Sweet's Laboratories, Incorporated]. If each half-interest continues to oppose the other, the business will of course stop."

The Business Corporation Law provides a remedy for such contingency which plaintiff invoked by his amended bill. Instead of applying the remedy, the learned court below, in substance, took charge of the business management in a vital particular, and by a method, I think, which disregards the rule that a court should not interfere where the questioned act is not fraudulent, ultra vires, or in conflict with by-laws.

The facts, stated in the prior opinion, need not be repeated, but it may be said that when plaintiff and Sweet united their interests by creating Gum, Incorporated, they provided for equal shareholding; we assume that plaintiff did so because he thought the contribution by Sweet would be in his interest; Sweet became half owner in the corporation for the purpose of obtaining a customer for its product which was the base out of which chewing gum is made. A part of the agreement was that Gum, Incorporated, would purchase from Sweet all the base it required. This agreement to unite their interests, made in 1930, was carried out informally until May, 1932, when the corporation was formed. Mr. Bowman testified that the agreement to buy the chewing gum base from Sweet was conditioned that "the quality of your base will always be equal to that of any other base, and also your price will always be fair."

On June 7, 1932, the following resolution was adopted by Gum, Incorporated: "RESOLVED, That all contracts for supplies of chewing gum base shall be made with Sweets Laboratories, Inc., and all purchases of said chewing gum base shall be made from said Sweets Laboratories, Inc.

"RESOLVED, That no contracts or purchases of materials or supplies of any kind be made without the approval of the Board of Directors."

When dissension came in 1936 it was centered on a request by the plaintiff's half interest addressed to the half interest of Sweet that the price of base should be reduced. Sweet replied that the price could not be reduced because the base could not be produced for sale at less, and that Gum, Incorporated, was charged the same price as other customers paid Sweet for the same base. There was no breach of contract in the sense that Sweet was charging Gum, Incorporated, more than it charged any other customer.

There, then, was the issue on which the two interests were deadlocked. Who was to decide between them?

There is nothing illegal about the contract consummated by the union of their interests in corporate form. It was a term of the contract that each half interest should do whatever was lawful in the enjoyment of that half interest. Motives are immaterial so long as the act is lawful. Compare *Rosenblum v. Rosenblum*, 320 Pa. 103, 181 A. 583. The court should enforce what the parties agreed to.

The conflict leading to litigation was precipitated in a board meeting by a resolution,[1] the terms of which in-

---

[1] "WHEREAS, the price of base sold by Sweet's Laboratories, Inc., to Gum, Inc., is 34 cents a pound; and

"WHEREAS, base can be purchased from the Dreyfuss Company for less than 20 cents a pound; and

"WHEREAS, J. Warren Bowman has tested and experimented with the Dreyfuss Company base and has found that the said base is of better quality than the Sweet's Laboratories, Inc. base, and

dicate that the plaintiff's half interest sought to determine for the corporation what its management should do. The Sweet half interest resisted and voted against the resolution and, as the vote was a tie, the chairman of the meeting declared the motion lost.

When the parties got into the court below the second time, instead of proceeding with the trial of the case pursuant to the order made when the case was here before, a rule was granted on the defendants on September 28, 1936, "to show cause why a preliminary injunction should not issue enjoining the further purchase by Gum, Inc., its officers and agents of Chewing Gum base from Sweet's Laboratories, Inc., and directing Gum, Inc., its officers and agents to purchase Chewing Gum base from the Dreyfuss Company." I understand that on that rule, after hearing evidence supplementary to what was heard before, the order now complained of was made.

Instead of applying the provision of the Business Corporation Law of May 5, 1933, P. L. 364, 15 PS section 2852-1 et seq.,[2] the learned court below conducted an in-

---

that the gum made from the Dreyfuss base is a better gum than that made from the Sweet's Laboratories, Inc. base;

"NOW, THEREFORE, BE IT RESOLVED AS FOLLOWS:

"RESOLVED that the officers of this company be and they are hereby directed to make no more purchases of base from Sweet's Laboratories, Inc. until and unless Sweet's Laboratories, Inc. reduces the price of its base to 20 cents a pound. Provided further that the quality of the base so sold for 20 cents a pound shall be equal to, or better than, the base heretofore sold for 34 cents a pound. And provided further that if Sweet's Laboratories, Inc. shall not forthwith so reduce its price to 20 cents a pound for such quality of base, the company shall purchase its base from the Dreyfuss Company; and the officers of the company be and they are hereby directed to thereafter purchase all base from the Dreyfuss Company."

[2] Section 1107, 15 PS section 2852-1107, provides: "Involuntary Proceedings for Winding Up and Dissolution.—A. The several courts of common pleas of the Commonwealth may, upon petition filed by a shareholder of a business corporation, entertain proceedings for the involuntary winding up and dissolution of the cor-

quiry into the deadlock resulting from the equal division of the two interests. Each interest had three directors. The learned court held that two of the directors representing the Sweet interest were disqualified from voting "on the ground that they were pecuniarily and otherwise interested in Sweet's Laboratories, Inc." The learned court does not explain what is meant by the words "otherwise interested in Sweet's Laboratories, Inc.," and I have no means of ascertaining it from the record. They were pecuniarily interested but it was precisely that pecuniary interest of each half ownership, which, in the beginning, led to Sweet's becoming a half owner and the plaintiff becoming the other half owner of Gum, Incorporated, as has been stated. Such pecuniary interest cannot rightfully be regarded as disqualifying one of the half interests from voting, and allowing the other half interest to take the sole control. The Sweet directors were no more interested in the success of Gum, Incorporated, than the plaintiff's directors. That they were also interested in Sweet could not be disqualifying because from the inception of their relations the intention was that they should act in both capacities. Each had precisely the same character of interest in the success of the corporation. The unfortunate thing was that parties who had set up a business with equal interests should have allowed their differences to reach a stage where they could not agree. There was no fraud in what the directors did at the board meeting; it was always possible by their organization to have a deadlock; but that was not fraud. The record does not present a case calling for the aid of equity to prevent a majority from wrongfully imposing on a minority.

---

poration, when it is made to appear: . . . (4) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof."

I do not understand that the cases cited in the opinion just adopted decide that the court will interfere with corporate management in the circumstances shown; the rule is now being extended to include a class of cases not before within its purview; in *Whyte v. Faust,* 281 Pa. 444, 127 A. 234, the decision was that equity would not remove an officer of the corporation; *McDougall v. Huntingdon & Broad Top Mountain R. R. & C. Co.,* 294 Pa. 108, 143 A. 574, was really the case of an insolvent corporation, as page 114 shows, in which a different rule applies; in *Schmid v. Lancaster Avenue Theatre Co.,* 244 Pa. 373, 91 A. 363, this court held the challenged action of the majority "was in itself a fraud upon the minority rights."

I think the action of the court below was wrong and that the decree, based on that erroneous conclusion, should be reversed; that the record should be remitted with directions to proceed in accordance with the Business Corporation Law unless some other reason than any that has appeared is shown against it.

Mr. Justice SCHAFFER and Mr. Justice DREW concur in this opinion.