McNernie *v.* W. S. Peace, Inc., Appellant.

Argued January 12, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*C. William Kraft, Jr.,* with him *Raymond E. Larson,* for appellant.

*Thomas J. Reilly,* with him *Albert H. Pearce,* for appellee.

OPINION BY MR. JUSTICE STERN, January 26, 1942:

Plaintiff is a real estate salesman. In August, 1935, he entered the employ of defendant, a corporation engaged in the general real estate business. Under his contract, which was oral, he was to receive 50% of all commissions on sales and leases effected by him. He claims that in the latter part of August or the beginning of September, 1935, defendant further orally agreed to pay him 15% of all commissions obtained through his efforts in procuring any operative, speculative or other builder to employ defendant as agent in the purchase and sale of houses and the development of ground for dwelling house construction, plaintiff to be entitled to such percentage regardless of what salesman in defendant's employ consummated the ultimate transaction. He asserts that shortly thereafter he introduced one Myers L. Girsh, a speculative builder, to defendant through its treasurer and sales manager, Daniel G. Kelly, as a result of which Girsh used defendant as his exclusive real estate broker. From the business thus procured defendant received a large amount of commissions, to recover 15% of which plaintiff brought the present action and obtained a verdict, sustained by the court below, of $4,368.20.

In his original statement of claim plaintiff, in pleading the alleged additional oral agreement, averred that he was to be paid the extra commission if by his efforts he succeeded in having any operative or speculative builder use defendant's office to purchase and develop ground for dwelling house construction and engage the services of defendant as selling agent. At the trial, he amended by stating that this commission was to be payable if he obtained a builder, not necessarily to purchase

and develop ground for dwelling house construction, but to purchase and sell houses and dwellings. The allowance of this amendment and the refusal of the court thereupon to grant defendant a continuance are the subjects of complaint on this appeal, but we find here no reversible error. Pleadings may be amended at any stage of the proceedings and the matter is one within the discretion of the trial court: *Trabue v. Walsh*, 318 Pa. 391, 393, 177 A. 815, 816; *Bowman v. Gum, Inc.*, 327 Pa. 403, 409, 193 A. 271, 273. As the statute of limitations had not run it is of no practical importance to decide whether the amendment added to or otherwise changed the cause of action. The refusal to grant a continuance is also within the reasonable discretion of the trial judge: *Roebling's Sons Co. v. American Amusement & Construction Co.*, 231 Pa. 261, 80 A. 647; *Rooney v. Maczko*, 315 Pa. 113, 118, 119, 172 A. 151, 153; *Romanowski v. Morganstein*, 111 Pa. Superior Ct. 443, 447, 170 A. 379, 380, 381. Since defendant denied that any oral agreement whatever existed in regard to an allowance of additional commissions to plaintiff, the amendment as to the exact terms of the alleged agreement could not have affected the presentation of its case. The court offered defendant the right to renew its plea of surprise at the end of the trial if it found itself unable to produce any witness made necessary or desirable as the result of the amendment, but the plea was not renewed and defendant does not now assert that it was deprived of the benefit of any testimony which might have been helpful to its cause.

A careful reading of the record satisfies us that plaintiff produced sufficient evidence to compel the submission of the case to the jury in regard to the making of the alleged agreement and the performance of the services thereunder entitling plaintiff to the commissions claimed. He testified that at a meeting of defendant's salesmen Kelly, whose authority is admitted, made an address in which, after stating that defendant was desirous of obtaining speculative or operative builders as

customers, he told the salesmen that they should "get speculative builders and the salesman who brought them in the office would be protected, as far as commissions were concerned, *on anything they did through the office at any time or in any way,*" and, "regardless of who handled the prospect after he came in, the man who originally introduced him was to receive a certain percentage of the gross commissions and sales that went through the office." Following a discussion, the rate was fixed at 15%. Plaintiff testified that his understanding of the agreement was that it was "to include all branches of real estate" handled by defendant on behalf of the builder. Myers L. Girsh admittedly became a customer of defendant, used its office for his real estate transactions and employed defendant as his broker. While he did not, at the beginning, develop ground for dwelling house construction, he did purchase existing dwellings, renovate and remodel them, build garages and other minor structures, and sell the houses when reconditioned; such activities placed him fairly within the category of a "builder." Moreover, he was a "speculative" builder, since his transactions were for the purpose of making profits from hoped-for but uncertain increases in price rather than obtaining smaller but steadier returns from capital investment. Although plaintiff does not pretend to have negotiated the specific transactions in which defendant earned the commissions of which plaintiff now claims a part, he originally introduced Girsh to Kelly and listed and shortly thereafter sold one property for Girsh; he testified that Kelly acknowledged plaintiff had "made a good connection" and that Kelly told the other salesmen about it, using it as an incentive for them to obtain similar customers, and further told them that plaintiff "was handling Mr. Girsh" and the salesmen should turn over to plaintiff the listings of ground in the section in which Girsh was then operating. The only reason why plaintiff did not himself pursue his solicitation of Girsh was because Kelly said,

while admitting Girsh was plaintiff's "speculator," that plaintiff "was not to worry about commissions but kindly let him handle Girsh as he thought he would be better pleased meeting the principal of W. S. Peace. He [Kelly] told me [plaintiff] to let him handle the deals but not to worry about the commissions." Kelly denied these alleged remarks and conversations, but if, as found by the jury, they were true, defendant cannot successfully assert that it did not obtain Girsh as a customer through the efforts of plaintiff.

In January, 1937, a company was incorporated known as Warner-West Corporation. It was practically a one-man corporation, dominated and substantially owned by Girsh. A part of the commissions claimed by plaintiff were from transactions in which defendant sold for this corporation dwelling houses constructed by it. At the trial plaintiff amended his statement of claim to aver that Girsh continued his business relations with defendant under the name and title of Warner-West Corporation, an amendment unnecessary because of the virtual identity of Girsh and the corporation. That defendant itself recognized this identity is shown by the fact that it made remittances of the proceeds of sales to Girsh and not to Warner-West Corporation.

One small item of commissions resulted from a transaction in which Girsh was the purchaser of certain houses and the commissions were paid to defendant by the liquidators of a bank who sold the properties. Since plaintiff's agreement covered all commissions resulting from anything done "in any way" by the customer obtained by plaintiff and included "all branches of real estate," plaintiff was as much entitled to recovery in this transaction as in those where Girsh was the seller.

Judgment affirmed.