# Pennsylvania Labor Relations Board v. Hall's Furniture Store, Inc.

*Robert E. Woodside, Jr.*, Attorney General, *M. Louise Rutherford*, Deputy Attorney General, *John P. McCord* and *George L. Reed*, for Pennsylvania Labor Relations Board.

*Rhoads & Sinon*, for defendant.

BRAHAM, P. J. (fifty-third judicial district, specially presiding), June 11, 1951.—Hall's Furniture Store, Inc., has appealed from two orders of the Pennsylvania Labor Relations Board. One appeal at Commonwealth docket, 1950, no. 262, is taken from an order of the board finding it guilty of unfair labor practices and directing it to desist. The other at Commonwealth docket, 1950, no. 261, is from an order refusing an election. A third petition has been considered by the board concurrently with the two appeals just mentioned. It is a petition by the board at Commonwealth docket, 1950, no. 247, for enforcement of its order. Because the cases arise out of the same set of facts and because they have been considered by the board as one general proceedings they will be so considered here.

The labor union involved is Teamsters & Chauffeurs Union, Local No. 776, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

Hall's Furniture Store, Inc., has been found guilty of unfair labor practices and has been ordered to desist. Its appeal challenges certain procedural rulings by the board, denies the sufficiency of the evidence to support the board's conclusion of unfair practices, and complains of the board's failure to credit defendant's evidence of unfair practices on the part of the labor union.

A brief statement of the facts is necessary. On June 6, 1949, the union charged unfair labor practices on the part of Hall's. The union, according to the charge, had undertaken to organize defendant's employes and to that end had secured signed cards from six of the truck drivers, helpers and warehousemen designating the union to act for them in collective bargaining. Claiming these six to be the majority of a unit of Hall's business the union made demand upon Hall's for recognition as bargaining agent. Instead of acceding, the employer called his employes together and agreed to pay them more money. After receiving the increase of pay the six employes signed a paper which had been prepared by the employer's counsel, the effect of which was to revoke the authorization to act as their agent which had been given by the application cards. Thereupon the workmen and the employer took the position that the six employes were not members of the union and had no one to represent them in collective bargaining but themselves.

When the dispute was brought before the board the case for the complainants was made out by the testimony of the six employes who testified concerning the manner in which their employer raised their pay after they had signed cards for the union and concerning their subsequent attempt to revoke the authorization by the cards. They were not asked specifically how they came to sign the cards in the first instance, but John Hall who testified for defendant, said he had heard that

threats were employed to induce them to sign. Later at a continued hearing the employer called the six employes who testified that they signed the cards when a man named Bill, who purported to represent the union, told them he would picket the plant.

After the board by its decree nisi, dated April 3, 1950, found Hall's guilty of unfair labor practices and directed it to bargain with the union, to wit, on April 26, 1950, George E. Rollason and other employes of defendant petitioned the board to order a secret election. On May 18, 1950, defendant employer was allowed to appear in the action and on the paper containing his appearance he also requested a secret election. An election was refused by the board.

The case now before the court aptly illustrates the principle that when the power to find facts, draw inferences and arrive at an ultimate conclusion has been delegated to a board or commission the courts must respect a proper exercise of the power: Chapin v. Pennsylvania Labor Relations Board, 356 Pa. 577, 581. Upon appeal "it is the duty of the court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious"; Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398, 400.

First, the evidence must be examined to determine whether the board was justified in concluding that the employer was guilty of unfair practices which led to the revocation by the six employes of the authority theretofore given the union to act for them. This phase of the case presents little difficulty. It is perfectly clear that after John Hall, president of defendant company, received from the union a demand for recognition of its status as bargaining agent, he called in the six employes who had signed cards and induced them to

recall their authorization. He represented to them that he might have to discontinue delivery service and employ an outside agent for delivery; he promised them a raise in wages, representing the failure to grant the wage previously as a mere oversight; he caused to be prepared by defendant's attorney and signed by the six employes the written revocation which was intended to terminate the union's authority.

Section 6 of the Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.6 forbids as unfair labor practice an employer "to interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act" or "to refuse to bargain collectively with the representatives of his employes".

At the time of the conference between Mr. Hall and employes of defendant, there had been no admission by defendant that the union represented its employes and no finding by the board to that effect; but Mr. Hall did know that enough of the employes had signed up with the union to move the union to demand bargaining rights. The case of Medo Photo Supply Corp. v. National Labor Relations Board, 321 U. S. 678, decided under the Wagner Act in 1944, has not the complete authority claimed for it by the board in the case at bar because there the employer had recognized the union. Later upon the appearance of signs of dissatisfaction among the employes the employer treated directly with them and encouraged them to throw off the authority of the union. This practice was held to be unfair although it was the employes who were the aggressors.

The case at bar more clearly resembles National Licorice Co. v. National Labor Relations Board, 309 U. S. 350, where, after the union claimed to have authority from a majority of the employes, the employer set out by the use of wage increases and contracts made directly with the union to circumvent the union. A finding by the board that the union represented a ma-

jority of the workers when the unfair conduct of the employer began was upheld and given effect. There is necessarily a zone of uncertainty while employes are trying to organize; but the law requires an employer to recognize a duly selected bargaining agency of an appropriate unit of his employes, "unless the facts show that in the exercise of reasonable judgment he lacked knowledge of the appropriateness of the unit or the selection of the majority representative": National Labor Relations Board v. Piqua Munising Wood Products Co., 109 F.(2d) 552, 556.

There is ample evidence to support the board's conclusion that after defendant's president learned of the selection by the employes of the union as a bargaining agent he set out to defeat the effort to organize.

Here notice must be taken of defendant's complaint regarding the indulgence with which the trial examiner allowed the board to amend its pleading to make the allegations correspond with the proof. Beyond expressing some astonishment at finding so technical a point of practice raised so confidently and argued so ably and tenaciously in an administrative proceeding it is not necessary to say much. It has long been the law that pleadings may be amended at any stage of the proceedings: McNernie v. W. S. Peace, Inc., 344 Pa. 24, 26; Bowman v. Gum, Inc., et al., 327 Pa. 403, 409. The precise form of the amendment was too uncertain when the motion to amend was granted; but defendant was allowed a continuance and every opportunity to answer so no harm was done. Nor did the examiner err in calling to the attention of the lawyer for the board an apparent admission in evidence of defendant's answer. One party cannot employ his own pleadings as evidence in his own behalf. They are the clearest example of self-serving declarations. The examiner did right in ignoring the technical advantages defendant

may have gained by a failure to make appropriate and timely objection.

Next must be considered the unfair labor practices alleged to have been indulged in by the union. Section 6(2) (d) of the Labor Relations Act of 1937, added by the Act of June 30, 1947, P. L. 1160, 43 PS §211.6 (2) (d), forbids as an unfair labor practice any union "to picket or cause to be picketed a place of employment by a person or persons who is not or are not an employe or employes of the place of employment". Defendant called the six employes at a continued hearing to testify in general, that a person known to them only as "Bill" said if they did not join the union he would throw a hundred pickets about the store and in addition, would strike and would picket Hall's Motor Transit Company, another enterprise owned by Mr. Hall. The witnesses said they did not want to hurt Mr. Hall and therefore signed.

Concerning the interpretation of this evidence the board disagreed. Two members found this evidence unreliable and insufficient to support a finding that the union had resorted to unfair practices in order to gain representation for defendant's employes. They point out that certain of the witnesses testified to signing before the representations were made, that there are discrepancies concerning what was said at the meeting, and that the inability of these men to identify "Bill" is suspicious. The third member of the board found these witnesses credible, refused to consider them wholly devoted to defendant's interest, and pointed out the failure of the union to deny the identity and agency of "Bill", although according to the evidence, he was present at the meeting presided over by the secretary of the union.

The decision of the majority of the board must be treated as the decision of the board: Baltimore & Ohio R. R. Co, et al. v. United States et al., 298 U. S. 349,

National Labor Relations Board v. Ohio Calcium Co., 133 F. (2d) 721, 724. The decision as to the conduct of the union is of the utmost importance because, if the union secured its alleged authority to act for defendant's employes by duress this is a complete defense. This follows from section 2 of the Act of June 9, 1939, P. L. 293, 43 PS §211.10.1. In re Ewart, 42 D. & C. 307, was cited by the board but that related to conduct of the union in overcrowding the employer's restaurant, conduct which the court found not to be "in connection with or as part of the actions forming the basis of the complaint" and hence not covered by the statute. In the case at bar the conduct of the union which is complained of relates to the securing of the very authority which the employer is condemned for flouting.

To recapitulate up to this point, there is evidence to support the board's findings of unfair practices on the part of the employer and of lack of unfair practices on the part of the union. However, the cleavage within the board on the subject of the union's alleged unfair practice is significant as showing how close the question was.

This leads to a consideration of the final major problem. Did the board err in refusing the petition of certain of defendant's employes, other than the six, joined in by defendant, for a secret ballot on the right of the union to represent them?

The material part of section 7 of the Labor Relations Act, as amended, 43 PS §211.7(c), is as follows:

"Whenever a question arises concerning the representation of employes the board may, and, upon request of a labor organization, or an employer who has not committed an act herein defined as unfair labor practice, or any group of employes . . . representing . . . thirty percentum or more of the employes of that unit, shall investigate such controversy and certify . . . the names of the representatives. . . . The

Board . . . may utilize any suitable method to ascertain such representatives, except that if either party to the controversy so requests, a secret ballot of employes shall be taken within twenty days. . . ."

The board refused the election on the ground that petitioning employes were not seeking to substitute any other union for Local 776 of the Teamsters & Chauffeurs Union but only to prove that no union was wanted and because the employer had been guilty of unfair practices which reduced the union's majority.

Here must be noted an uncertainty regarding the unit of defendant's employes which is to be affected by the board's order of August 31, 1950, directing the employes to bargain collectively. Both the original charge, the original complaint and the board's third finding speak of "truck drivers, helpers and warehousemen." The Rollason petition and the evidence taken thereon speaks of "truck drivers, helpers and repairmen." This is the proceeding docketed at Commonwealth docket, 1950, no. 261. The Rollason petition recites that the union claims to represent those petitioners, an allegation which the union does not deny. If the union represents the Rollason group it is only, so far as the evidence shows, because of the signing by the six employes and the order of the board based thereon. The board said in the opinion with its decree nisi that Rollason claimed to be representing the truck drivers and helpers. The board's third and eleventh findings of fact and its third conclusion of law must be reconciled with the petition of the Rollason group and the evidence taken thereunder. The court is entitled to know whether the Rollason group are considered by the board to be bound by the board's existing order. The board has not rejected the application for a secret ballot because the Rollason group is a different unit.

How then could the board refuse an application for a secret election made by a group of employes (possibly

30 percent of the unit) and joined in by the employer? First, says the board, because the petition for an election was not to establish collective bargaining but to prevent it. In re G. C. Murphy Co., 51 D. & C. 535, is cited on this point. The difference between the cases is clear. In the Murphy Company case the union had been certified and had acted as a bargaining agent for three years. Then a petition for an election to throw off the union was filed. In the case at bar the attempt to obtain certification of the union is still executory as will appear from the dates: On April 3, 1950, the board filed its decree nisi certifying the union; on April 20th exceptions were filed by defendant; on April 26th the Rollason petition was filed; on August 31st the board entered its decree and on September 21, 1950, the employer took an appeal which was allowed as a supersedeas.

Medo Photo Supply Corp. v. National Labor Relations Board, supra, and Oughton et al. v. National Labor Relations Board, 118 F. (2d) 486, cited by the board, are also cases in which the union had been recognized by the employer or its status established by an election. Here we have no final certification. The statute allows a secret election, upon proper request, "whenever a question arises concerning the representation of employes". The election would be to determine whether the union does represent the employes.

The board's second reason for refusing the secret election was the unfair labor practice which it found the employer to have committed. It cites the Medo Photo Supply Corp. case, supra, to show that an employer may not, to justify refusal to bargain with a union, set up defections induced by its own conduct. Here a word of caution to the board. All of us, courts and administrative tribunals alike, must accept the law as propounded by the Supreme Court of the Commonwealth, whether we like it or not. In Shafer Petition,

347 Pa. 130, 135, the precise point before us was ruled, the court stating in the second sentence of section 7 (*c*) of the act (43 PS §211.7(*c*)) :

"Although an 'unfair' employer has no right, under the first sentence, to initiate an investigation concerning representation, he may, as a *party to the controversy* after it has been properly instituted, demand a secret ballot."

Is the employer a proper party to appeal? This court, speaking by Judge Richards, has already decided in the affirmative: Goldberg Appeal, 66 D. & C. 296. Furthermore, the denial of the right of the employer to appeal is based upon the distinction between a "certification" proceeding and a "charge" proceeding. The former is of a nonadversary, fact-finding type and it is not until an employer is commanded to do or to refrain from doing something under a "charge" petition that review may be had of the findings as to certification: Jordan Marsh Co. v. Labor Relations Commission, 312 Mass. 597, 45 N. E. (2d) 925. This case and the others cited by the board to the point are not pertinent, however, because certification of a bargaining agent is now subject to appeal, our law differing in this particular from the Federal Law: Act of June 1, 1937, P. L. 1168, sec. 9(*b*), as amended, 43 PS §211.9(*b*).

Finally, does the application by the Rollason group for an election stand alone or must it be considered together with the "charge" proceedings and the petition for an order of enforcement which are also before us. The essential unity of the proceedings between one employer and his employes appears from the opinion of Mr. Justice Jones in Pennsylvania Labor Relations Board v. Henry, 361 Pa. 565, 569. There it was held that, although the proceeding began as a "charge" proceeding, the board might therein find and certify a bargaining agent. Again in Chapin v. Pennsylvania

Labor Relations Board, supra, it was held that a certification proceeding, unappealable standing alone (no mention being made of the section allowing appeal), might be the subject of an appeal when combined with a charge of unfair labor practices on the part of the employer.

Just so in the case at bar. Upon charges of unfair labor practices by the employer the board has found unlawful interference by the employer, has certified the union as agent for the drivers, helpers and warehousemen and has ordered the employer to desist. Intermediate in this proceeding certain employes, claiming to be also drivers, helpers and mechanics, have intervened with a petition for a secret election. The employer also demands an election. There has been no prior recognition or certification of any union. In our view the case is controlled by Shafer Petition and the parties are entitled to a secret election. Let reference be made to the language of Mr. Justice Stearne in Shafer Petition at page 133:

"It has become clear that workers favor secret ballots as the most democratic method of selecting their representatives, free from the coercion of their employer or the union seeking to organize them. It has become clear that bargaining is facilitated, and better relations established, where, by a fair election, the employer has been conclusively shown that his employees have selected the collective bargaining agent."

Two extremes must be avoided in administering the Labor Law. At a time when the courts are seeking to free themselves from the shackles of artificial and rigid writs and forms of action which sometimes substitute lawyer's logic for the people's justice, we must not foster in administrative tribunals the same tendency to split up into minute fragments a problem which is essentially one. The other extreme is a distrust of the very procedures upon which regulation of labor

must ultimately rest. In the last analysis it is the will of the workers expressed by their votes which must ultimately prevail. If, as appears in the case at bar, it was the activity of the union which secured for the workers the raise in pay which was admittedly overdue, the workers will not have forgotten. The split in opinion within the board itself was all the more reason for following the rule of Shafer Petition and allowing the appeal.

The case must be sent back to the board for further proceedings under the Rollason Petition at Commonwealth docket, 1950, no. 261. It is not entirely clear from the pleadings and the evidence whether the board holds that Rollason and his group are bound to bargain with the union or whether they are regarded as a separate unit. If they are found to be employes who are a part of the unit of truck drivers, helpers and warehousemen, described in the board's third finding of fact and third conclusion of law, and are found to be bound by the board's decree nisi to bargain with the union, they have a right to a secret election. If on the other hand they are found to be outside the organized unit and not bound to bargain collectively, the board was right in dismissing their petition and in refusing the employer's demand for a secret election.

Entertaining these views we make the following

## Order

Now, June 11, 1951, the action of the board in overruling defendant's first, second, third, fourth, fifth, sixth, seventh and eighth exceptions is affirmed, but a ruling on the final order of the board is suspended pending the completion of the investigation ordered by this Court in the related case at Commonwealth docket, 1950, no. 261.

Rupp, P. J., and Sohn, J., did not participate in the disposition of this case.